381 So.2d 462 (1980)
STATE of Louisiana
v.
Lloyd LANDRY (two cases).
Nos. 65542, 65780.
Supreme Court of Louisiana.
March 3, 1980.
*463 Benjamin Vega, Jr., Donaldsonville, for defendant-appellant in No. 65542 and for defendant-relator in No. 65780.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Aubert Talbot, Dist. Atty., Malcolm J. Dugas, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee in No. 65542 and for defendant-respondent in No. 65780.
LANDRY, Justice ad hoc.
Lloyd Landry (defendant) seeks reversal of his bench conviction of aggravated assault (La.R.S. 14:37) and sentence to pay a fine of $100.00 and costs or thirty days in jail, both by appeal and application to this court for supervisory writs. Considering the sentence imposed, we treat this matter as being before us on the supervisory writs granted herein rather than on appeal, La.Const.1974, Art. 5, Section 5(D)(2), and reverse on finding that defendant acted in justifiable self defense.
The charge in this case stems from a student-teacher altercation which occurred on the premises of Donaldsonville High School, Donaldsonville, Louisiana during the lunch hour on September 21, 1978. It involved Ray Jacob, a sixteen year old male student and defendant, a male adult teacher. Defendant was on duty in the boys' restroom to prevent smoking when an argument commenced between Jacob and defendant. The evidence is conflicting as to whether Jacob pushed defendant during the argument. The altercation proceeded into an adjacent hallway where a group of students quickly gathered. Defendant requested that one of the students summon the Assistant Principal, Emile Chiquette. Shortly thereafter Chiquette appeared on the scene and stood between Jacob and defendant. Jacob removed his belt and wrapped it around his hand whereupon Chiquette restrained Jacob and suggested that defendant leave. Defendant left. Chiquette then instructed Jacob to report to the principal's office but Jacob refused and left the building instead.
Jacob returned shortly thereafter carrying a piece of two by four approximately 30 inches in length. Whether he obtained the board on or off campus is not clear from the record. Finding defendant, Jacob inquired whether defendant still wanted to fight. Defendant replied that he would not let Jacob hit him with the board. A group of students quickly gathered and all but surrounded Jacob and defendant. Jacob admits swinging the club at defendant who pulled back to avoid being struck. Whether or not defendant was struck is a matter in dispute. Jacob denies that defendant was struck. Defendant maintains he was struck on the finger inflicting injuries for which he sought medical attention on one occasion. After the first attempted blow, defendant turned and ran, breaking his way through the ring of students and overturning chairs behind him to impede Jacob's pursuit. Jacob followed and swung the club at defendant at least one more time, striking a table instead of hitting defendant. Defendant proceeded directly to the teacher's parking lot near the school building. He procured a gun which he kept in his car, walked to the front of his car (to have his vehicle behind him to protect himself *464 from the rear), and stood facing the school building. Shortly thereafter Jacob appeared walking in the general direction of the parking lot, still carrying the board.
At this juncture the prosecution and defense versions of what ensued, varies considerably. Jacob and two alleged eyewitnesses, Tyronne Madison and Ronald Price, testified in essence that Jacob was attempting to leave the school ground via the main gate which was in the general vicinity of where Jacob was heading. Jacob stated he was not looking for defendant and that he was proceeding toward the gate when he suddenly and unexpectedly encountered defendant. Jacob added that defendant cut across his path, pointed the gun at Jacob and told him to run because defendant was going to kill him.
Ronald Price, student, testified, that after the inside altercation, he went outside and was standing near Mrs. Violet Marchand, Principal and Emile Chiquette, Assistant Principal. He spoke with the Principal and Assistant Principal while observing Jacob proceed in the general direction of the main gate and teacher parking lot. Although he was not near enough to hear what was said, he saw defendant point a gun at Jacob while Jacob was stopped about 25 or 30 feet away from defendant.
Tyronne Madison, student, followed Jacob out of the building after the initial confrontation. He was walking a few feet behind Jacob. When the outside confrontation occurred, he was approximately 10 to 20 feet distant from Jacob. He heard conversation between Jacob and defendant but could not make out what was said. He did not see defendant point the gun at Jacob but did see defendant waving the gun around in the air.
Defendant denied pointing the gun at Jacob or threatening him in any manner. He was standing in front of his car in anticipation of a group of students coming out after him. He was also looking toward the school to determine if it were expedient to re-enter the building to see about his wife who also taught at the school. He added that his wife was present during part of the initial confrontation inside the building and that he had requested her to summon help. His wife was one of his principal concerns at that time. They had a mutual agreement that in the event of any emergency neither would leave the school without the other. He had no intention of leaving without his wife. Defendant denied threatening Jacob verbally or pointing the gun at him in any manner. He remained standing in front of his car holding the gun down by his side. When Jacob was about 30 feet away, Jacob must have seen the gun because Jacob stopped, reversed direction and went back toward the school. According to defendant, although the gate was in the general area, Jacob was not proceeding toward the gate but on a line which would have taken him directly to defendant. He added that no words were spoken between them. Upon arrival of the police a short time thereafter defendant surrendered the weapon, a loaded automatic pistol, to an officer.

Assignment Number 1
Error is alleged in the trial court's refusal to require the prosecution to furnish defendant a reputedly exculpatory statement given by Jacob in the investigation of aggravated assault charges lodged against Jacob for his assault on defendant. Jacob was convicted of that offense.[1] Request for *465 the statement was made prior to trial by discovery motion pursuant to La.C.Cr.P. Articles 718 and 719. The motion was denied on the state showing partial disclosure but refusing full disclosure on the ground that the statement contained no exculpatory matter and did not pertain to defendant's case. It appears the state read defense counsel part of the statement but declined to permit defense counsel to view or copy the document.
At trial defense counsel renewed his disclosure request. The trial judge ruled he would decide the issue should the state attempt to introduce the statement in full. The state then presented the statement to the trial judge for the judge to determine whether it made reference to Jacob having first pushed defendant immediately before attempting to hit defendant the first time. The trial court incorrectly concluded the statement made no such reference and declined to require the state to produce the document. We find that in so holding the trial court erred, but, under the circumstances of this case, the error was harmless.
La.C.Cr.P. Article 718, provides that on motion of the defense the state shall permit inspection, copying and examination of books, papers and documents which are: (1) material and relevant to the issue of guilt or punishment and which are favorable to the defense.
La.C.Cr.P. Article 719 requires that on defense motion, the state shall permit the defense to copy, photograph or otherwise reproduce reports or physical or mental examinations and scientific tests or experiments made in or material to defendant's case and in possession, custody or control of the state and intended for use at trial. Exculpatory evidence is required to be produced on defense request even though it is not intended for trial use.
La.C.Cr.P. Article 723 recites that except as otherwise provided in La.C.Cr.P. Articles 716, 718, 721 and 722, the prosecution is not required to furnish statements by witnesses or prospective witnesses other than defendants.
We find no merit in the state's contention that Article 718(1), supra, is inapplicable to statements given in another case. The article does not so restrict the availability to defense of exculpatory statements. Moreover, Article 719, supra, provides that exculpatory material must be furnished even though the state does not intend to use it at trial. Consequently, we interpret Article 718(1), supra, to mean that any exculpatory statement must be furnished defendant on request, even though made by a witness other than defendant.
Our opinion in this regard is fortified by the recent decision of the United States Supreme Court in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Agurs, supra, declared that for purposes of an accused's right to fair trial, under the due process clause of the Fourteenth Amendment with respect to state trials, a prosecutor has a constitutional obligation to volunteer exculpatory material to the defense. The decision also holds that this duty is not breached unless the omission is of sufficient gravity to result in denial of defendant's right to a fair trial. It also decreed the standards of materiality to be as follows:
"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt *466 about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
Applying Agurs, supra, we note that the only favorable matter contained in the requested statement was Jacob's admission, contrary to his testimony at trial, that Jacob pushed defendant before attempting the first blow. It is significant that the trial judge offered to permit this part of the statement to be introduced for impeachment purposes, but defense counsel declined and argued its admissibility in proof of the tendered defense of self-defense.
We deem the matter inconsequential in that the statement is only cumulative evidence of Jacob's aggression which is otherwise overwhelmingly established by the record in that Jacob admitted he swung the board at defendant and pursued defendant inside the building with the intent to strike defendant again. Whether Jacob first pushed defendant before striking the first blow is insufficient to create a reasonable doubt that did not otherwise exist concerning defendant's guilt or alleged justification by way of self-defense.
We find this assignment lacking in merit.

Assignment of error Number 2
It is asserted that there is a total lack of evidence to prove the essential elements of assault which is defined in LSA-R.S. 14:36 as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery". LSA-R.S. 14:18 defines aggravated assault as an assault committed with a dangerous weapon.
In arguing the lack of evidence defendant relies upon his own denial of threats directed at Jacob or his pointing or aiming a gun at the prosecuting witness. Defendant also relies on the testimony of Mrs. Marchand and Chiquette, both of whom testified that when they went outside they saw no threatening actions on the part of defendant and neither saw Price or Madison outside the building. Defendant also notes conflict in the statements of Madison and Price and also that Price was the only witness other than Jacob who stated that defendant pointed the gun at Jacob. It is contended in effect that Jacob, Price and Madison were thoroughly impeached consequently there is no evidence to support the charge.
La.Const.1974, Article 5, Sec. 5, limits review of this court in criminal cases to questions of law only. Pursuant thereto this court has consistently refused to review sufficiency of the evidence in criminal cases except where there is a total lack of evidence, where circumstance presents an issue of law. La.Const.1974, Article 5, Sec. 5; State v. Winzer, 354 So.2d 533 (La.1978); State v. Hatter, 350 So.2d 149 (La.1977).
Jackson v. Virginia, 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979) appears to dictate a change in our former jurisprudence concerning the scope of review in a criminal matter. Jackson, supra, held that the due process clause of the United States Constitution prohibits conviction of crime except on proof sufficient to convince the trier of fact of the existence of every essential element of the offense beyond a reasonable doubt. Under Jackson, supra, it seems the test may no longer be whether there is some evidence of guilt. Reversal of a conviction is mandated where the proof of guilt is such that no rational trier of fact could find guilt beyond a reasonable doubt.
Applying Jackson, supra, herein, we find that although the evidence is conflicting on the crucial issues of threats by defendant and defendant's pointing or aiming the gun at Jacob, the record, as a whole convinces us that there is evidence in the record to support a rational trier of fact returning a verdict of guilty beyond a reasonable doubt.

Assignment Number 3

Self-defense
Defendant urges the general justification provisions of LSA-R.S. 14:18 to the effect that justifiable conduct, otherwise criminal, *467 is a defense to prosecution for crime based on such conduct. It also provides that justification can be claimed inter alia: (7) when the offender's conduct is in defense of a person or of property under circumstances set forth in LSA-R.S. 14:19-22, inclusive.
Section 19, supra, pertinently states that force or violence on the person of another is justifiable to prevent a forcible offense or trespass against property in one's lawful possession; provided the force or violence used is reasonable and apparently necessary to prevent such offense; and, provided further the force or violence used does not result in homicide.
Justification requires a dual inquiry. First, was the force used reasonable under the circumstances, an objective inquiry. Secondly, was the force apparently necessary to prevent the imminent offense, a subjective inquiry. State v. Ford, 368 So.2d 1074 (La.1979).
As regards the degree of proof required to establish an affirmative defense in a criminal matter, this court, in a sharply divided opinion, recently held that the no evidence test will not henceforth limit criminal appellate review in those cases where the defense bears the burden of proving an affirmative defense. State v. Poree, ___ So.2d ___ (La.1979). Poree, supra, which involved the defense of insanity, held that an affirmative defense need be established only by a preponderance of evidence, not beyond a reasonable doubt as is incumbent on the state to prove defendant's guilt.
Applying State v. Ford, supra, and Poree, supra, we find defendant has successfully met the objective inquiry of whether the force used was reasonable under the circumstances. It is undisputed that Jacob was the aggressor. He struck out at defendant inside the school with an instrument clearly capable of inflicting serious bodily harm. Jacob then pursued defendant as defendant fled for his safety. In the pursuit, Jacob again attempted to strike defendant as defendant was in the act of escaping.
The time element between defendant's flight from the building, with Jacob in pursuit, and the confrontation later near the parking lot is a most important factor relative to defendant's plea of self-defense. Although there is dispute concerning the interval between Jacob's first leaving the building and subsequently returning with the club, there is little or no dispute concerning the time element and sequence of events following defendant's flight from the building to the parking lot. The record clearly preponderates to the effect that defendant went immediately to his vehicle and obtained the gun he kept in the car. He then, at once, proceeded to a point about 25 feet from the front of his automobile and observed Jacob approaching in defendant's general direction (if not directly toward defendant), still carrying the board with which Jacob mounted the initial attack on defendant a very short time previously. In this regard the record establishes beyond doubt that only three to five minutes, at most, transpired between the time defendant fled the building and the outside encounter occurred.
We find it was subjectively reasonable for defendant to conclude that Jacob was intent upon continuing the prior attack. Having been just subjected to a violent armed assault, it was reasonable for defendant, upon seeing Jacob coming in defendant's direction still carrying the weapon, to conclude that Jacob's purpose in approaching was to carry out his previously demonstrated intent to inflict serious bodily harm upon defendant. We hold that defendant had ample reason to fear imminent serious personal harm at the hands of Jacob.
We also find that defendant's brandishing the gun at Jacob and threatening Jacob with harm, without actually firing the weapon, was use of reasonable force. Unquestionably, Jacob was the aggressor from the onset of the entire incident. Armed with the club, Jacob was capable of inflicting serious if not fatal injuries on defendant's person. Jacob's persistence and the degree of hostility displayed toward defendant was reasonable cause for defendant to *468 believe that unless a considerable deterring force was employed, defendant could expect a continued armed assault on defendant's person.
We conclude that defendant has established the affirmative defense of legal justification (self-defense) with the degree of certainty required.
Accordingly, defendant's conviction and sentence are reversed and set aside and the charge against defendant dismissed.
DENNIS, J., dissents, being of the opinion that the evidence adequately supports finding that the defendant was the ultimate aggressor and guilty of aggravated assault.
MARCUS, J., dissents.
NOTES
[1] The pertinent part of Jacob's statement given officers in the investigation of the charge against Jacob, is as follows:

"I came out of third hour class and I went to the bathroom. Mr. Landry was in the bathroom and I asked him did he need anything to tell me and he said `no.' He said if he had anything to tell me, he would tell me and I told him ok, and said I'll stay out of his way and he'll stay out mine. He also said if I would get in his way he would move me out the way and I told him he wasn't going to do that, then he pushed me. Then after that I pushed him, then he told me to go to the office, then I told him I came in the bathroom for to use, then he grab me again then, he pushed the door open, holding me by my arm, then he told one of the boys standing there to call the principal and the boy called the principal and the principal came in there, and he stood between us then he tried to swing at me again, but he couldn't because the principal was standing there, then after that I left off the campus and picked up a piece of wood, then went back to the school. I pushed him first, and then swung at him with the wood and then he ran and I was going for the leave off the campus, then he stopped me with a gun and I stopped and then he told me I better run nigger, cause I'm going to kill you, then I ran back toward the office, where alot of people was standing, then thats when the police and my mother came, then after they took me to the police station."