415 So.2d 473 (1982)
Lloyd John LANDRY
v.
ASCENSION PARISH SCHOOL BOARD.
No. 14814.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*474 Robert L. Kleinpeter, Kleinpeter, Kleinpeter & Kleinpeter, Baton Rouge, for plaintiff & appellee.
Gordon R. Crawford, Crawford, Golsmith & Holdridge, Gonzales, for defendant & appellant.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is an appeal by the Ascension Parish School Board from a judgment of the District Court rendered on February 23, 1981 and signed on March 11, 1981, decreeing that:
"... there be judgment herein in favor of the plaintiff, Lloyd John Landry, and against the defendant, Ascension Parish School Board, reversing the decision of the Ascension Parish School Board terminating the employment of Lloyd John Landry as a classroom teacher and ordering his reinstatement to the position of a teacher with tenure at the high school level and that plaintiff, Lloyd John Landry, be reimbursed for all pay since the date of his discharge, together with all other emoluments and fringe benefits to which he would be entitled had he not been discharged together with all costs of Court."
This suit arises out of the following set of facts: Lloyd John Landry was a teacher with tenure under LSA-R.S. 17:443, et seq., having taught in the public school system for a period of ten years or more with eight years devoted to the Ascension Parish School System. An incident occurred on September 21, 1978, involving Landry and Ray Jacob, a 16 year old male student, in the boys' restroom area, where Landry was on "duty" during recess. The student accosted the teacher, and an argument ensued. Words were exchanged and a scuffle took place between them. The altercation proceeded into the hallway, where a group of students quickly gathered. Thereafter, the scuffle was broken up by the Assistant Principal, Emile Chiquette. Chiquette told Jacob to go to the office, but he refused. Jacob then wrapped his belt around his fist, threatening Landry; and, disregarding the instructions of the Assistant Principal, he left the area, and apparently left the campus.
Shortly thereafter, Jacob reappeared on the campus in the same area, armed with a two by four (2 × 4) piece of wood, approximately 30 inches in length. He immediately sought out Landry in the boys' restroom and physically attacked the teacher, with Landry apparently dodging most of the blows intended for him. After managing to get out of the area, with Jacob in wild pursuit, swinging his board as a weapon, Landry ran to his automobile (which was in the teachers' parking lot), unlocked the car, and obtained a pistol from the glove compartment. Thereafter, he stood in front of his vehicle with the pistol at his side (to have his vehicle behind him to protect himself from any attack from the rear), anticipating Jacob and a group of students coming after him. He was also looking toward *475 the school building, concerned about the safety of his wife, who was also a teacher at the same school. Jacob did in fact appear in the area, still carrying the piece of wood, but retreated when he saw the plaintiff with his pistol in hand. The evidence shows that Landry made certain that the pistol was visible, but he did not point the gun at Jacob, or anyone else.
Plaintiff was never the aggressor. The record also shows that, to the contrary, Landry fled the scene rather than continue the fight with the student, but that Jacob pursued him in an attempt to resume the altercation. It was only when Jacob observed that Landry was also armed, that he reversed his direction and went back toward the school.
The Donaldsonville Police Department was summoned. Upon arrival of the police a short time thereafter, Landry surrendered the pistol to an officer. Landry was removed from the school campus. Subsequently, charges of aggravated assault were filed against both Landry and Jacob, with both cases being tried before Judge A. J. Kling, Jr., Ascension Parish Court, Gonzales, Louisiana. Judge Kling entered a verdict of guilty against both defendants; and, certiorari was granted by the Louisiana Supreme Court only as to Lloyd John Landry.
The Supreme Court reviewed Landry's conviction, and reversed the conviction and sentence, finding that Ray Jacob was the aggressor at all times and that Landry was acting in legal justification or self-defense. State v. Landry, 381 So.2d 462 (La.1980).
The facts have been clearly set forth and judicially accepted in the Landry case, supra, which has been made a part of the record in the instant case. The Supreme Court stated:
"We find it was subjectively reasonable for defendant to conclude that Jacob was intent upon continuing the prior attack. Having been just subjected to a violent armed assault, it was reasonable for defendant, upon seeing Jacob coming in defendant's direction still carrying the weapon, to conclude that Jacob's purpose in approaching was to carry out his previously demonstrated intent to inflict serious bodily harm upon defendant. We hold that defendant had ample reason to fear imminent serious personal harm at the hands of Jacob.
"We also find that defendant's brandishing the gun at Jacob and threatening Jacob with harm,[[1]] without actually firing the weapon, was use of reasonable force. Unquestionably, Jacob was the aggressor from the onset of the entire incident. Armed with the club, Jacob was capable of inflicting serious if not fatal injuries on defendant's person. Jacob's persistence and the degree of hostility displayed toward defendant was reasonable cause for defendant to believe that unless a considerable deterring force was employed, defendant could expect a continued armed assault on defendant's person."
Insofar as the facts involved in the tenure hearing are concerned, we note the date referred to by many of the witnesses, in response to the questioning of counsel for the school board, was repeatedly referred to inadvertently as September 28, 1978, when the correct date was September 21, 1978. (There is no dispute that the pertinent incidents occurred on September 21, 1978.)
In addition to the testimony of the students, as summarized in Landry, supra, the testimony of several teachers and the Superintendent was taken during the tenure hearing. The Principal, Violet Marchand, together with the testimony of the Assistant Principal, Emile Chiquette (Chiquet), briefly relates the events which occurred on September 21, 1978. The pertinent testimony from these witnesses, as well as that of Raymond Joseph Brown, James Lester Dykes, Sr., Annie Aucoin Nichols, Clarence M. Simms, Catherine Davis, Helen Sanders, Elaine Rome and Alice Oubre, was to the *476 effect that Lloyd John Landry was a good teacher and had no unusual disciplinary problems with students, and that his manner of handling and coping with students had always been acceptable and reasonable. In addition to the testimony of these teachers and principals, the Superintendent, M. B. Gautreau, testified that the School Board had no policy with reference to firearms on the school campus and no rules with reference to weapons in vehicles on campus.
Superintendent Gautreau, upon inquiry by one board member at the tenure hearing, testified that he did not consider the conduct of Landry as the kind of conduct he would expect from a school teacher. Other than this, there is no testimony in the record which adversely reflects on Landry as a teacher in any respect.
Landry was given an efficiency rating (September 24, 1978 and September 29, 1978) as an "excellent teacher" and as being "extremely capable and knowledgeable".
After the tenure hearing, the Board adopted, by a vote of 6 to 3, a motion, dated December 8, 1978, dismissing Lloyd John Landry as a school teacher effective as of September 21, 1978, without statement of its facts or basis for its conclusions.
The leading case with reference to the procedural requirements in a teacher tenure case is Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959), wherein the Court observed:
"The Teachers' Tenure Act (LSA-R.S. 17:441-444), under which plaintiff's petition was filed, has for its object the protection of worthy teachers. It has been repeatedly held by the courts of this State that this act should be liberally construed in favor of the class of persons designed to be its primary beneficiaries. Andrews v. Union Parish School Board, La.App., 184 So. 574; 191 La. 90, 184 So. 552; Lea v. Orleans Parish School Board, 228 La. 987, 84 So.2d 610, 613." (113 So.2d at 464)
And, then the Court (113 So.2d at 465) remarked:
"Our study of the Teachers' Tenure Act and the jurisprudence convinces us that the provision in LSA-R.S. 17:443, supra, providing `for a full hearing to review the action of the school board' is for the benefit of discharged teachers. If a school board decides that sufficient evidence was adduced before it to sustain the dismissal of a teacher, she is entitled, if she desires, to a full hearing on the merits in the district court with a presentment of additional evidence in her behalf.... The defendant school board would then be given an opportunity to negate this evidence.... If the discharged teacher is content with the record as made up at the hearing before the school board, she has a right to have her case submitted on the record, subject, of course, to the discretion and ruling of the trial judge."
In connection with the judgment before us at this time, the trial judge rendered the following written reasons for judgment:
"The Plaintiff in this suit against the Ascension Parish School Board seeks to reverse the action of defendant in removing him from his position as a teacher with tenure in the public school system of this parish.
"Counsel for defendant School Board, on the date of trial, filed an exception of no cause of action the basis of which was the failure of plaintiff to allege facts which, if proven, would justify a reversal of the action taken by the board. An examination of the petition reflects that it was filed with this court within one year of plaintiff's discharge and that it seeks `to reverse the action of the School Board', all as set out in R.S. 17:443. The exception is obviously without merit and is therefore overruled.
"The conduct of Plaintiff which led to his discharge occurred on September 21, 1978. His actions on that date led to his being tried and convicted in the Parish Court of Ascension Parish on the crime of aggravated assault which conviction was reversed by our Supreme Court by Judgment of March 3, 1980. See State v. Landry, 381 So.2d 462. The decision (introduced into the record and judicially *477 cognizable by the Court) sets forth the factual occurrences and legal principles upon which the court concluded that Plaintiff's use of his firearm in the manner therein described constituted the affirmative defense of legal justification or self-defense.
"Shortly after the occurrence of September 21, 1978, the Plaintiff was notified by Defendant School Board in writing of a dismissal hearing to be held, the basis for which were eight enumerated charges. The hearing was held on November 17, 1978 following which he was discharged effective September 21, 1978. Plaintiff contends in this Court that defendant erred in discharging him 1) without any finding of `wilful neglect of duty, incompetency or dishonesty, as the same relates to his ability as a school teacher', 2) that he was discharged for having a firearm locked in his automobile and using same in his defense and 3) in resting its decision on the premise that it did not `condone' Plaintiff's action in defending himself with an automatic pistol.
"Despite the fact that (as mentioned above) some eight charges were lodged by Defendant against Plaintiff, the only issue presented to this court by the Defendant School Board, as contended by its counsel in brief, is whether the Plaintiff's conduct on September 21, 1978 amounted to a wilful neglect of duty, the position being taken that Plaintiff's acts, while not a violation of a regulation of the Board, were by their very nature as to require no regulation over one holding the position of classroom teacher. In this same vein, Counsel for Defendant argues that mere vindication of Plaintiff on the criminal charge against him does not of itself place his actions within the range of acceptable conduct for one in his position and that his deviation from the Board's concept of what is acceptable amounts to a `wilful neglect of duty'. This argument is concluded with the observation that alternative courses of action open to the Plaintiff would have been to have gone to the school office or to have simply driven away in his automobile.
"Counsel for Plaintiff contends that as the latter had a constitutional right to keep and bear arms `subject to some regulations' and it was unreasonable and arbitrary on the part of Defendant to deny him his right of self defense and to dismiss him from his position because of one isolated instance of what might be considered a grave lack of judgment.
"The Court feels that the argument advance[d] by Counsel for Plaintiff is a valid one.
"The record (which, by stipulation includes the proceedings of the Defendant School Board on November 17, 1978) reflects that Plaintiff had taught in the public school system for some 10 years or more, eight of which were with Ascension Parish. With the exception of an instance or two in which he had difficulty with a student, the testimony was to the effect that Plaintiff had had no disciplinary problems and that he was a good teacher; indeed, the efficiency rating given him by the principal on September 24th and 29th, 1978 referred to him as an `excellent teacher' and being `extremely capable and knowledgeable'. The Superintendent testified that the School Board had no policy with respect to firearms either on the campus or being kept in an automobile.
"It appears to the Court that here, following close on the heels of an unforeseeable and extremely disruptive and regrettable occurrence the Defendant School Board has in its reflective wisdom decreed to Plaintiff `Thou shall not invoke self defense'. While this court would not condone the use of firearms as a means to be employed in solving the disciplinary problems arising in the public schools today, it does hold that to discharge the Plaintiff under the circumstances here presented constitutes policy making which could be argued to be ex post facto in nature and which certainly is punitive in nature. To put it another way, the Court is of the firm conviction that the discharge of the Plaintiff from his position as a dedicated teacher is entirely too *478 extreme and too harsh, with the harm done to him being in no way commensurate with the good, if any, which might possibly inure to the Public School System as a result.
"For the reasons assigned, the Court holds that Plaintiff is entitled to the relief prayed for and, when presented with a judgment in conformity with the foregoing, same will be rendered accordingly."
In the case at bar, we have an isolated incident where a teacher, Landry, defended himself in a reasonable manner when he was physically attacked by a student who was apparently determined to inflict bodily harm on the "duty teacher", as evidenced by his refusal to report to the school office when directed to go there by the Assistant Principal, his wrapping his fist with his own belt (as a weapon), and then leaving and returning with a 30-inch two by four board (as a weapon), which he actually used in an unprovoked attack on the teacher. The record does not show any other instance of action on the part of Lloyd John Landry which might be described as unacceptable behavior on the part of a teacher, and the record reflects no violation of a rule, regulation, or policy of the school board.
In view of the circumstances of this case and the evidence which was presented to the board, we find that the dismissal of Landry was unreasonable and arbitrary. We conclude, as did the trial court, that there was no rational basis for the board's action in dismissing Landry. See Watts v. Winn Parish School Board, 66 So.2d 350 (La.App. 2 Cir. 1953), cert. denied, October 9, 1953.
For the assigned reasons, we affirm the judgment of the trial court, reversing the decision of the Ascension Parish School Board which terminated the employment of Lloyd John Landry as a classroom teacher, and ordering Landry's reinstatement to the position of a teacher with tenure at the high school level; and that plaintiff be reimbursed for all pay since the date of his discharge (September 21, 1978), together with all other emoluments and fringe benefits to which he would be entitled had he not been discharged.
The defendant-appellant is cast for all costs for which it is legally liable.
AFFIRMED.
NOTES
[1] We do not find, from the record, that Landry ever "brandished" the gun at Jacob or threatened him with harm, although plaintiff did, of course, make certain that the pistol was visible to the aggressor, Jacob.