450 So.2d 1057 (1984)
STATE of Louisiana
v.
Tommy ALDRIDGE.
No. 83-KA-1199.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
*1058 Ossie Brown, Dist. Atty., Baton Rouge, for plaintiff-appellee.
Loren Kleinpeter, Baton Rouge, William J. Guste, Jr., Atty. Gen., State of La., New Orleans, for defendant-appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
Tommy Aldridge was charged with second degree battery, tried by judge alone, and found guilty of simple battery. He was given a suspended sentence of six months imprisonment and placed on one year unsupervised probation, subject to certain routine conditions not pertinent here.[1]
Aldridge appeals his conviction, alleging as his one assignment of error that the trial judge "committed error in not considering the evidence of self-defense and/or justification for the battery inasmuch as the preponderance of the evidence clearly established the same." Our review of the record convinces us otherwise, and we accordingly affirm.
Aldridge committed the offense on November 19, 1982, the Friday before the 55-21 victory over Florida State which sent LSU to the Orange Bowl,[2] when, after two brief encounters and a profane repartee, he sent Tommy Curry, the victim, "flying into the stereo box" with a backhand punch that hospitalized Curry for two days with a fractured skull and caused partial loss of hearing in his right ear. Needless to say, Curry missed the game.
The State's version of the events immediately preceding the ill-fated punch is based upon the testimony of the victim and four of his friends and understandably differs from that of the defendant's.
Curry, a sophomore at L.S.U. at the time and member of the Kappa Sigma Fraternity, had gone with some of his fraternity brothers to Fred's Bar & Grill, a Baton Rouge establishment catering mainly to the local college students. He was standing on the dance floor with his friends circled around him when someone from behind splashed a drink on his neck. He turned around to see who it was, exclaiming under his breath, "Who was that asshole?"
Ed Wall, one of his fraternity brothers and ostensible peacemaker during the entire episode, pointed out Aldridge, but told Curry to forget about it because Aldridge was "just horsing around" with a couple of girls. He had seen Aldridge throw the drink at one of the girls he was with, miss and hit Curry.
Curry glanced over at Aldridge's group, standing about ten feet away. Aldridge apparently took this to be a confrontational stare, for he came over to Curry and said, "Do you have a problem? Why are you staring at me?" Curry replied, "Well, I got this drink spilled on me." Wall testified Aldridge was belligerent and appeared to be drunk. Aldridge and Curry exchanged words, and then Aldridge started shoving Curry around. Wall and Al Morris, Curry's fraternity big brother, stepped in to separate them. Wall grabbed and held Aldridge until the bouncers came and broke them up. Wall attempted to smooth things over with Aldridge and things appeared to settle down. Everyone returned to his own group of friends.
Wall testified that one of Aldridge's female companions came over to apologize for the trouble (an apology which the young lady denied at trial ever making). Aldridge came over again and said, "If you have anything to say to me say it to me and not to her." Curry leaned over and whispered to Wall, "This guy's an asshole." Aldridge turned to Curry and said, "What *1059 did you say?" Curry backed down, "I didn't say anything." Aldridge insisted, "What did you say? I know you said something. You called me an asshole." Curry denied, "No, I didn't, I wasn't talking about you." Aldridge kept insisting until Curry finally agreed. "Okay, yes, you are an asshole." Curry turned back to the girl standing next to him, and that's when Aldridge sent him "flying into the stereo box."
Pandemonium broke loose. According to Al Morris, "I watched Tommy fall and then I jumped on Tommy Aldridge. And then everybody else jumped on and bouncers tried to break it up and it was just a big pile of people in the middle of the bar."
According to Aldridge, however, Curry and his buddies were the aggressors, not he. He testified that he unintentionally hit Curry with an empty cup after missing an over-the-shoulder hook shot into a nearby trash can. The music was loud, so he hollered out an apology, which Curry either didn't hear or ignored, for he kept staring at him. Aldridge went over to apologize, but the Kappa Sigs were belligerent and threatening. Several of them cursed him, so he left. He denied shoving anybody during the first encounter.
He returned a few minutes later to apologize again. Somebody shoved him, and somebody else said, "You'd better leave before we kick your ass." A crowd started forming. Outnumbered and nervous, he started to back away when out of the corner of his eye he saw two guys start to lunge for him. He claims that out of self-defense he struck out blindly, knocking Curry into the stereo box. Then everybody was on him.
None of the other witnesses who testified on his behalf actually saw the punch thrown. Jay Fraioli, the disc jockey on duty in the stereo booth about five feet away, testified that he saw Aldridge pushed in the second encounter but didn't hear any of the verbal exchanges.
LSA-R.S. 14:19 provides in part,
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person ...; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
Defendant argues that his version clearly proves that the punch was both reasonable and apparently necessary to protect himself from the advancing crowd. He further argues that because the trial judge did not discuss or review any factors of self-defense in rendering his verdict of simple battery, he did not properly consider the issue of self-defense, and that such omission is reversible error.
As to the latter argument, a judge in a bench trial is not required to give reasons in support of his verdict, nor is he even required to charge himself on the applicable law, since he is presumed to know it, unless one of the parties timely requests that he do so and provides him with the requested written charges. See LSA-C. Cr.P. art. 781. As the trier of fact, the trial judge is simply bound to apply the law to the facts as established by the evidence and find the defendant not guilty if not convinced of his guilt beyond a reasonable doubt.
By finding the defendant guilty of simple battery in this case, the trial judge implicitly considered and rejected defendant's self-defense claim. Presented with conflicting testimony about the events preceding the punch, the trial judge obviously chose to believe the testimony of the State's witnesses rather than that of the defendant's. Such credibility evaluations do not present legal questions reviewable on appeal in this court. See LSA-C.Cr.P. art. 802(3); State v. Jacobs, 435 So.2d 1014 (La.App. 1st Cir.1983); State v. Coleman, 432 So.2d 323 (La.App. 1st Cir.1983).
We note that defendant's argument assumes that the defendant rather than the State in a non-homicide case has the burden of proving self-defense.
*1060 Technically, this issue has not been decided in Louisiana, although dicta in State v. Freeman, 427 So.2d 1161, 1163 (La.1983), indicates that the burden does indeed rest on the defendant. As in Freeman, however, we need not decide this issue. Regardless of who has the burden of persuasion, and even assuming that the State must disprove self-defense beyond a reasonable doubt, it is quite clear that the defendant in this case did not act in self-defense. Rather than reasonable or apparently necessary, the punch was, as the trial judge described it, a "cheap shot to say the least."
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] For the curious, those conditions are that he not be convicted of any criminal offense during probation, that he not harm, harass, intimidate or confront the victim in any way, and that he pay court costs and deposit $500.00 into the criminal court fund under the authority of LSA-C.Cr.P. art. 895.1.
[2] L.S.U.'s dramatic victory was played before a crowd of 76,637 delirious fans who littered the field with oranges after L.S.U.'s first scoring drive. That delirium turned to depression after the 31-28 loss to Tulane on November 27, 1982.