491 So.2d 42 (1986)
STATE of Louisiana
v.
Joseph BARNES and Edward Barnes.
No. 86-KA-13.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 1986.
*43 Stephen Gernhouser, New Orleans, Martha E. Sassone, Gretna, for defendants-appellants.
Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Before CHEHARDY, BOWES and WICKER, JJ.
WICKER, Judge.
Joseph Barnes and Edward Barnes, defendants, were charged by bill of information with the attempted second degree murder of Howard Bridges (Bridges) in violation of L.S.A.-R.S. 14:27, 14:30.1. They entered pleas of not guilty, were tried by jury and convicted of L.S.A.-R.S. 14:34, aggravated battery. The trial court sentenced Joseph Barnes to ten years at hard labor. Edward Barnes was sentenced to five years at hard labor.
The testimony at trial set out the following: Bridges testified that on the evening of October 18, 1984 he and Johnny Davis (Davis) entered a bar located in Jefferson Parish and discovered Edward Barnes lying on the floor. Bridges recounted that Edward Barnes had played cards in his home earlier that evening. He further stated that he searched Edward Barnes's pockets, but found no money. Upon awakening, Edward Barnes accused both *44 Bridges and Davis of theft. At approximately 2:00 or 3:00 a.m. on October 19, 1984 all three men left the bar to begin a two or three mile walk home to their neighborhood. Shortly thereafter, Edward Barnes, still angry about the suspected theft, pushed Bridges and ran off. Later, when Bridges and Davis met Edward Barnes, Barnes began cursing the two men. Thereafter, Davis attempted to speak to Barnes and then departed. Bridges further testified that he subsequently encountered Edward Barnes and explained that he had not taken any money. However, Edward Barnes began hitting and kicking him from the front while Edward's brother, Joseph Barnes, stabbed him with a knife thirteen times from behind. In addition, Bridges indicated that Edward Barnes stated that he (Edward Barnes) was trying to kill him. Finally, the attack ceased and Bridges crawled under a house until daylight when a neighbor came to his aid. Bridges was hospitalized for serious injuries, including a punctured lung.
On the other hand, Edward Barnes testified that Bridges and Davis pursued him from the bar while throwing bottles and other objects at him. He further stated that as the three men neared their neighborhood, Bridges and Davis picked up boards and hit him with a stick. Mildred Artis, a neighbor, testified that she saw two dark men running after Edward Barnes whereupon she summoned Edward's brother, Joseph, to come to his aid. The brothers do not deny attacking Bridges, but they assert that their actions were justified since Edward acted in self-defense and Joseph acted in defense of his brother.
Defendant, Joseph Barnes, assigns four errors:
1. That the trial judge erred in his instructions to the jury with regard to who bears the burden of proof on the issue of self-defense;
2. That the trial judge erred by sustaining the state's objection to testimony by an eyewitness as inadmissible hearsay;
3. That the trial judge erred in failing to grant a new trial or a judgment of acquittal due to insufficient evidence relative to an essential element of the crime, and
4. That the trial judge erred in imposing the maximum sentence allowable thereby resulting in an excessive sentence.
Defendant, Edward Barnes, adopts Joseph Barnes's assignments of errors, numbers one (1) and two (2) and additionally assigns the following error:
1. That the trial judge erred in failing to grant a judgment of acquittal due to insufficient evidence to prove each element of the crime beyond a reasonable doubt.

ASSIGNMENT OF ERROR NUMBER ONE
Both Joseph Barnes and Edward Barnes assign as error the trial judge's refusal to instruct the jury that the burden of proof is on the state to show that the defendants had not acted in self-defense or in defense of another. The trial judge refused to charge the jury accordingly and instead instructed them that the burden of proof in a non-homicide case was on the defendant to show by a preponderance of the evidence that the use of force or violence was justified.
The special jury charge requested by defense counsel was that "[a] defendant who raises the defense that he acted in self-defense does not have the burden of proof on that issue. The state has the burden of proving beyond a reasonable doubt that the alleged attempted homicide was not committed in self-defense." The actual charge given by the trial judge with respect to the burden of proof was:
... The burden of proving that the use of force or violence is justified in non-homicide cases is on the defendant and need only be established by a preponderance of the evidence, not beyond a reasonable doubt as is encumbent on the State to prove the defendant's guilt ... It is justifiable to use force or violence in the defense of another person when it is *45 reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person. Again, the burden of proving that the use of force or violence is justified as a defense of others is on the defendant, and need not be establishedand need only be established by a preponderance of the evidence, not beyond a reasonable doubt, as is encumbent on the State to prove the defendant's guilt ...
Defense counsel argues that by placing the burden of proving the defense on the defendants, they are denied the presumption of innocence. However, although the due process clause requires proof beyond a reasonable doubt of the elements of a crime it does not mandate that the state prove beyond a reasonable doubt the nonexistence of every affirmative defense. Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In Patterson, supra, the defendant was convicted of second-degree murder. He raised the statutory defense of acting while under the influence of extreme emotional distress and thereby sought to reduce the crime to manslaughter. The Patterson Court considered the issue of whether New York law which characterized the defense as an affirmative one and which placed the burden on the defendant to prove it by a preponderance of the evidence violated due process. In concluding that the conviction under New York law did not deprive the defendant of due process, the Court reasoned that "[t]his affirmative defense ... does not serve to negative any facts of the crime which the State is to prove in order to convict of murder ... The State was itself unwilling to undertake to establish the absence of those facts beyond a reasonable doubt, perhaps fearing that proof would be too difficult ..." 432 U.S. 207-208, 97 S.Ct. 2325. Moreover, the court noted that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required ..." 432 U.S. 211, 97 S.Ct. 2327.
The burden of proof, however, is actually two burdens: namely, the burden of persuasion and the burden of production. See W. LaFave and A. Scott, Criminal Law at 46-51 (1972) [hereinafter Criminal Law]. "[a]s to the burden of production of evidence, it is uniformly held that the defendant is obliged to start matters off by putting in some evidence in support of his defense ... [Footnote omitted] unless of course the prosecution, in presenting its own side of the case, puts in some evidence of a defense, in which case the matter of defense is properly an issue though the defendant himself produces nothing further to support it ..." [Footnote omitted] Criminal Law at 47.
In the instant case, the defendants first raised the issue of self-defense and defense of another through the cross-examination of Bridges when Bridges denied attacking the Barnes brothers. The defendants next raised these defenses through the testimony of Mildred Artis who testified on their behalf. She testified that she saw Edward Barnes running from two men and that she so informed his brother, Joseph Barnes. Edward Barnes also testified that he was being chased and struck by Bridges and another man and that his brother, Joseph, came to his aid.
Thus, the defendants properly raised the issues of self-defense and defense of another so as to meet their initial evidentiary burden of producing some evidence in support of their defense.
The next issue regards the burden of persuasion. On this issue, jurisdictions either place the burden of persuasion on the defendant to prove the defense by a preponderance of the evidence or instead place the burden on the prosecution to prove beyond a reasonable doubt the nonexistence of the defense. Criminal Law at 48.
Louisiana jurisprudence has long held that a defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue; the state must prove beyond a reasonable doubt that the defendant did not *46 act in self-defense. State v. Brown, 414 So.2d 726 (La.1982); State v. Necaise, 466 So.2d 660 (La.App. 5th Cir.1985). The issue of who bears the burden of persuasion in a non-homicide case is unsettled in Louisiana at this time. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Aldridge, 450 So.2d 1057 (La.App. 1st Cir.1984). However, in a non-homicide case, the Louisiana Supreme Court clearly considered the justification defense of aggravated assault to be an affirmative one. State v. Landry, 381 So.2d 462, 467-468 (La.1980) same case Landry v. Ascension Parish School, 415 So.2d 473 (La.App. 1st Cir.1982); L.S.A.-R.S. 14:19. The Landry Court likened the justification defense to the insanity defense which "need be established only by a preponderance of evidence, not beyond a reasonable doubt as is incumbent on the state to prove defendant's guilt." 381 So.2d 462 at 467.
In Aldridge, supra, the First Circuit noted that "defendant's argument assumes that the defendant rather than the State in a non-homicide case has the burden of proving self-defense ... this issue has not been decided in Louisiana, although dicta in State v. Freeman, 427 So.2d 1161, 1163 (La.1983), indicates that the burden does indeed rest on the defendant." 450 So.2d 1057 at 1059-1060. See also State v. Cook, 460 So.2d 1075 (La.App. 2nd Cir.1984), writ denied 466 So.2d 465 (La.1985), writ denied 466 So.2d 466 (La.1985), reconsideration denied 467 So.2d 1125 (La.1985). More recently, dicta in State v. Blache, 480 So.2d 304 (La.1985) in an aggravated battery case approves a jury charge which places the burden of persuasion on the state to prove beyond a reasonable doubt the lack of self-defense or defense of another. On the other hand, both Justices Marcus and Lemmon in their concurring opinions in State v. Freeman, 427 So.2d 1161, 1164 (La.1983), a non-homicide case, state unequivocally that the burden of proving self-defense should be on the defendant.
An excellent explanation of the distinction between those defenses which defeat an element of the offense and those which negate culpability is found in State v. Cheatwood, 458 So.2d 907, 910 N. 4 (La. 1984) as follows:
[e]xcept in a few specific instances, such as La.R.S. 14:63 (trespassing), La.R.S. 14:69 (possession of stolen property) and La.R.S. 14:14 (insanity), Louisiana statutory criminal law does not directly address the burden of proof for `defenses.' Nevertheless, there is a logical distinction between those defenses which actually defeat an essential element of the offense and those defenses which present exculpatory circumstances that defeat culpability, despite the state's proof beyond a reasonable doubt of all the essential elements. In the first category are defenses such as intoxication (La.R.S. 14:15) and mistake of fact (La. R.S. 14:16), which preclude the presence of a mental element of the offense. When such defenses are raised by the evidence, the state must overcome the defense by evidence which proves beyond a reasonable doubt that the mental element was present despite the alleged intoxication or mistake of fact.
Otherwise, the state would fail to meet its constitutional and statutory burden of proving guilt beyond a reasonable doubt of each element of the offense charged. La. Const. Art. I, [Section] 16 (1974); La.C.Cr.P. Art. 804; La.R.S. 15:271. However, defenses such as justification (La.R.S. 14:18) are truly `affirmative' defenses, because they do not negate any element of the offense. Compare United States v. Mitchell, 725 F.2d 832 (2nd Cir.1983) with State v. Burrow, 293 Or. 691, 653 P.2d 226 (1982); see also Model Penal Code, Proposed First Draft No. 1, [Section] 1.12(2) (1961).
It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of the offense and to require defendant to prove by preponderance of evidence the exculpatory circumstances constituting the `affirmative' defense. See W. Lafave & A. Scott, Criminal Law [Section] 8 (1972). The statutory *47 provisions setting forth the state's burden of proof refer only to the requirement that the state prove the elements of the crime-not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense. See La.R.S. 15:271; La.C.Cr.P. Art. 804; former La. C.Cr.P. Arts. 263 and 387 (1928). See also State v. Freeman, 427 So.2d 1161 (La.1983), Lemmon, J., concurring.
In the non-homicide case of aggravated battery there can be no doubt that none of the essential elements of the offense required to be proved by the state are involved and under Louisiana law we feel that affirmative defenses should be established by the defendant by a preponderance of the evidence. Cheatwood, supra at 910 N. 4. We therefore agree with the Cheatwood Court that the Louisiana legislature intended to require the state to prove only the essential elements of the offense and to require the defendant to prove the exculpatory circumstances by a preponderance of the evidence. See also Patterson, supra. In State v. Cook, supra the court analogized the affirmative defense of entrapment to that of insanity and self-defense and held:
[i]n view of the Louisiana Supreme Court holdings concerning the affirmative defense of insanity and its discussion of the affirmative defense of self-defense, by analogy we find that the defendant has the burden of production of evidence in support of his defense of entrapment and, having done so, he has the burden of persuading the trier of fact of the existence of facts constituting the defense by a preponderance of the evidence. See also Lafave and Scott, Handbook on Criminal Law, Section 48, Note 28 (1972 edition); Model Penal Code, Section 2.13(2). Cook, supra at 1083-84.
This court holds that a defendant in a non-homicide case in Louisiana has the burden of production as well as the burden of persuasion when self-defense or defense of another is asserted as a defense. We feel that self-defense and defense of another are affirmative defenses similar to the insanity and entrapment defenses. Furthermore, there is an additional reason for this court holding that a defendant in a non-homicide case in Louisiana has the burden of persuasion as well as of production when self-defense or defense of another is asserted as a defense. As stated in Freeman, supra, "[i]n the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary [footnote omitted]. State v. Landry, supra; State v. Ford, 368 So.2d 1074 (La.1979); State v. Guinn, [319 So.2d 407 (La.1975)] supra." 427 So.2d 1161, 1163. Thus, since the subjective inquiry is required, it is the defendant who would be in a better position to know those subjective facts. In fairness to the state this court believes that it would be placing an onerous burden on the state to disprove subjective influences on the defendant as it relates to self-defense or defense of another especially since the defendant has these facts at his disposal to produce to the court.
Therefore, this court holds that the jury charge given by the trial judge in this non-homicide case correctly placed the burden of proving self-defense or defense of another by a preponderance of the evidence on the defendants and we find the assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The second assignment of error urged by both defendants is that the trial judge erred in excluding statements made by an eyewitness on the ground that the statements were hearsay. Hearsay is generally defined as a statement made out of court which is offered to prove the truth of its content. State v. Joseph, 425 So.2d 1261 (La.1983). Such statements are considered inadmissible unless they meet the requirements of certain exceptions. L.S.A.-R.S. 15:434.
*48 Defense counsel contend that the statements are not inadmissible on several grounds, one of which is that the statements fall within the res gestae exception to the hearsay rule. Any event which constitutes res gestae is admissible as evidence. L.S.A.-R.S. 15:447. The factors which constitute res gestae "must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." L.S.A.-R.S. 15:448. The doctrine was explained in State v. Brown, 395 So.2d 1301, 1307 (La.1981) as including "spontaneous utterances and declarations made before and after commission of a crime ... testimony of witnesses pertaining to what they heard or observed before, during or after the commission of the crime."
Mildred Artis (Artis) testified that she observed two dark men chasing Edward on the morning of the incident. She further testified that the men spoke to her; however, the trial judge sustained an objection made by the state regarding any statements made to her as inadmissible under the hearsay rule. Artis' proffered testimony revealed the following exchange:
"Q. Ms. Artis, would you please relate for the record now, ma'am, when you approached these two dark men, what did they tell you they were trying to do to Edward Barnes?
A. Bash their damn head in.
Q. And was that all they said?
A. No, they said when they finished, then they would go home and go to bed.
Q. Okay. And was that it?
A. That was all."
Artis also testified that she saw Edward's brother, Joseph, and that she asked him to stop the potential altercation. At trial, however, she was unable to identify Bridges as one of the two men she said were chasing Edward.
The testimony of the unidentified men was evidence of out-of-court statements which were offered to prove the truth of the matters asserted therein, i.e. that these men were threatening serious harm. These out-of-court statements rest for their value upon the credibility of the out-of-court declarer. Therefore, they constitute hearsay. Joseph, supra.
In applying the standard enunciated in Brown, supra, we conclude that although the statements are hearsay, they are admissible under the res gestae doctrine. The statements were allegedly uttered before the commission of the crime and were linked to a continuous chain of events leading to the crime. However, not all errors on rulings require reversal; it is only those errors which "affect substantial rights of the accused" which do so. L.S. A.-C.Cr.P. art. 921.
In determining whether an error is harmless, the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence "might have contributed to the conviction" State v. Gibson, 391 So.2d 421, 427 (La.1980). In addition, the appellate court must also determine that the error was harmless beyond a reasonable doubt. Gibson, supra. See also State v. Westfall, 446 So.2d 1292 (La. App. 2d Cir.1984) writ denied, 450 So.2d 957 (La.1984).
Although the jury was not allowed to hear the allegedly threatening statements, it nonetheless was allowed to hear Artis' observations of two men with boards or sticks who were chasing Edward. The jury also heard her testimony that she summoned Joseph, thus suggesting her appreciation of danger. It is also interesting to note that although the jury did not hear her testimony with regard to the statements, it did hear a reference to the threatening statements by the Assistant District Attorney in closing argument.
The law recognizes that the amount of force which a person may justifiably use must be reasonably related to the threatened harm sought to be avoided. W. LaFave and A. Scott, Criminal Law at 392 (1972). In this instance Bridges was stabbed thirteen times in the back by Joseph while Edward struck him from the front. Although the alleged statements would provide justification for the brothers' *49 apprehension, it appears that excess force was used to fend off the imminent danger of the asserted board-wielding men. Moreover, although Edward did not stab the victim, he nonetheless testified that he did not stop his brother in the stabbing attack. If the victim's testimony is to be believed, Edward not only attacked Bridges from the front to prevent his escape from Joseph's stabbings, he also communicated to the victim that their intent was to kill and not merely to defend themselves. Thus, there was ample evidence to defeat their claims of self-defense and defense of others since they certainly would not have been justified in using excessive force.
Consequently, we conclude that the state has met its burden in showing that the possibility that the exclusion of the statements might have contributed to the defense was very minimal and less than reasonable in light of the other testimony evidencing the defendants' apprehension and their use of excess force. Therefore, we find that this assignment lacks merit.

ASSIGNMENTS OF ERRORS NUMBER THREE (JOSEPH BARNES) AND NUMBER ONE (EDWARD BARNES)
Both defendants contend that the evidence adduced at trial was insufficient to support the verdict of guilty of aggravated battery. In order to convict the defendants of aggravated battery, the state must prove these elements beyond a reasonable doubt: (1) that the defendants intentionally used force or violence on Bridges; (2) that the force or violence was inflicted with a dangerous weapon, and (3) that the dangerous weapon was used in a manner likely or calculated to cause death or great bodily harm. L.S.A.-R.S. 14:2(3); 14:33; 14:34 and State v. Day, 468 So.2d 1336 (La.App. 1st Cir.1985). Moreover, with regard to Edward, the state must also prove beyond a reasonable doubt that he was a principal in the commission of the crime. Principals are defined in L.S.A.-R.S. 14:24 as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime..."
Although counsel for Joseph Barnes contends that the state also had to show that Joseph was not acting to prevent a forcible offense against his person or his brother's person, the state has no duty to prove that Joseph did not act in self-defense as an element of the crime for reasons previously discussed relative to assignment of error number one. Furthermore, counsel's argument that the state failed to carry the burden of showing that Joseph attempted to kill Bridges is not pertinent since Joseph was not convinced of attempted murder; he was convicted of aggravated battery.
The standard of review with regard to the sufficiency of evidence was discussed in the recent Louisiana Supreme Court case of State v. Langford, 483 So.2d 979 (La. 1986), which explained that:
[i]n State v. Captville, 448 So.2d 676, 678, N. 2 (La.1984), this court stated that `[t]he Jackson standard is an objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt.' The Court had earlier recognized, in State v. Chism, 436 So.2d 464, 470 (La.1983) that the statutory provision on circumstantial evidence, La.R.S. 15:483, `emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.' Id. at 983.
In again citing Captville, the Langford court supplied the excerpt below:
[i]n Captville, supra, at 678-9, Lemmon, J. writing for a majority of the court stated:
`An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be *50 sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. As stated by this court in State v. Chism, 436 So.2d 464, 470 (La. 1983), La.R.S. 15:438 `may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.' Id. at 983.
In the instant case, the jury, after hearing all of the evidence found the defendants guilty of aggravated battery. They must have found the state's witnesses to be the more credible and did not find the defendants' affirmative defense of self-defense and defense of another to be proven. Defense counsel also takes issue with the state's failure to produce other eyewitnesses. It is true that the state only produced one eyewitness, the victim; Bridges. However there is no minimum number of witnesses required by law. The victim's testimony can sufficiently establish the elements of the crime. State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir. 1984), writ denied 449 So.2d 1347 (La. 1984).
Defense counsel further argue that the inconsistencies in the victim's testimony and that of the other witnesses contradicted the essential elements of the state's case. It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses and to overturn a trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Cockerham, 442 So.2d 1257 (La.App. 5th Cir.1983). It is the role of the fact finder to weigh the respective credibility of the witnesses, and an appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluation under the Jackson standard of review. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Butler, 450 So.2d 764 (La. App. 5th Cir.1984).
There is testimony as well as counsel's admission in brief that Joseph used a small knife, thereby supplying the requisite dangerous weapon. Defense counsel for Edward Barnes, however, contends that it was not proven by the state that Edward Barnes armed himself at any time or even had access to a dangerous weapon, nor was it proven that Edward had the specific intent to commit an aggravated battery upon Bridges.
Aggravated battery is not a "specific intent" crime; it requires general intent. L.S.A.-R.S. 14:11 states in pertinent part "[h]owever, in the absence of qualifying provisions, the terms "intent" and "intentional" [as used in the statutory definition of battery] have reference to `general criminal intent'." L.S.A.-R.S. 14:10(2) provides that "[g]eneral criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."
The record reflects that Edward Barnes did not have the knife, rather his brother, Joseph Barnes had the knife and committed the actual stabbing. With regard to Joseph, the brother with the knife, the circumstances are such that the thirteen stab wounds he inflicted upon the victim were reasonably certain to produce serious bodily injury, thereby supplying the requisite general intent. See State v. Hill, 434 So.2d 428 (La.App. 2nd Cir.1983) writ denied 440 So.2d 759 (1983). However, Edward Barnes' testimony indicates that he was a principal to the incident. On cross-examination the following exchange took place:
"Q. And you left with your brother though.
A. Yes sir.

*51 Q. So once your brother arrived there and did the stabbing, you were with him the whole time during the fight and you left with him, is that right?
A. Huh? Yeah, we left together.
Q. Now, when your brother pulled the knife, you didn't say, `Joseph, put that knife away,' did you?
A. No sir, I didn't, you know, I didn't really know he had the knife on him at the time, but like I say, I seen it after they started, you know, getting in quarreling and `cause like I say, I was trying to hold one of them off of myselfI wasJohnny Davis off, `cause both of them was beating him with boards. He didn't knowsee, I ain't had nothing in my hand from ...
Q. You didn't tell Joseph to put the knife away'Let's put the knife away and go'?
A. No, I didn't say it."
Furthermore, Bridges testified that when he asked "what the hell are you trying to do to me", Edward Barnes replied, "Trying to kill you." This statement indicates that Joseph and Edward were working in concert to inflict injuries on the victim. Not only did Edward Barnes reportedly make the statement, but while Bridges was being attacked and stabbed thirteen times from the rear, Edward was beating and kicking the victim from the front, thereby preventing his escape and exacerbating the injuries received by the victim.
The trial court judge in his charges to the jury explained the law on principals. The jury found both defendants guilty of aggravated battery, thus they must have determined that Edward Barnes was a principal to the crime. By his own testimony, Edward Barnes admits to being present while the stabbing took place. He also admitted to continuing the fight. In addition, he did not tell his brother to put down the knife. It appears that the elements comprising the law of principal when reviewed in the light most favorable to the prosecution, support the finding that Edward Barnes was a principal to the crime. In addition, the circumstances mentioned above indicate that both defendants had the requisite general intent to use force or violence on Bridges with a dangerous weapon in a manner likely or calculated to cause death or great bodily harm. Viewed in the light most favorable to the prosecution, the evidence presented supports that all elements of the crime of aggravated battery were proven by the state in this case. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
Joseph Barnes assigns as error the trial judge's imposition of the maximum sentence allowable for aggravated battery. L.S.A.-.R.S. 14:34 provides that the maximum penalty for aggravated battery is imprisonment with or without hard labor for not more than ten years and/or a fine of not more than $5,000.00 or both. The penalty actually imposed by the trial court was the maximum penalty of ten years with hard labor.
Defense counsel for Joseph argues that his sentence was excessive. He contends that the filing of the multiple offender statute and its subsequent withdrawal on the day of sentencing was prejudicial to Joseph Barnes because it created an erroneous impression of Barnes's past by the trier of fact. He also argues that no mitigating factors were considered in compliance with La.C.Cr.P. Art. 894.1. He maintains that an excessive sentence for the responsive verdict of aggravated battery was imposed.
Although a sentence is clearly within the limits established by statute, it may be held to be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). In determining whether or not a sentence was excessive, the Louisiana Supreme Court held in State v. Bonanno, 384 So.2d 355, 358 (La.1980) that:
"[a]s stated previously, to determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity *52 of the crime. State v. Goode, [380 So.2d 1361 (La.1980)] supra. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sence of justice. State v. Beavers, 382 So.2d 943 (La.1980)."
Absent a sentence that shocks our sense of justice, the trial judge is given great discretion in the imposing of sentences. State v. Lanclos, 419 So.2d 475 (La.1982). "Absent a manifest abuse of that discretion the sentence imposed by a trial judge should not be set aside as excessive." Id. at 478.
Guidelines for imposing sentences are provides for the trial judge in La.C. Cr.P. Article 894.1. While the trial judge need not recite each aggravating and mitigating circumstance listed in the article, the record must reflect that he adequately considered those factors. See State v. Davis, 448 So.2d 645 (La.1984); State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed 446 So.2d 1210 (La.1984).
Defense counsel contends that the trial judge did not follow the guidelines established in the article since he did not discuss any mitigating circumstances. While the trial judge did not expressly mention any mitigating factors, this alone does not require that the case be remanded for re-sentencing. Moreover, the trial judge's failure to state his factual basis for imposing sentences does not necessarily render a sentence invalid. The sentence will be upheld if the record clearly illuminates the sentencing choice and reflects that the sentence is not excessive. State v. Smith, 430 So.2d 31 (La.1983) dissent 432 So.2d 206 (La.1983). In State v. Dirden, 430 So.2d 798, 801 (La.App. 5th Cir.1983) we have held that:
"[w]here, as here, there is sufficient illumination of the record to demonstrate the trial judge was not arbitrary in imposing the sentence, and considered the nature of the offense, the character of the offender and the need for protection of the public interest, it is not necessary to set aside the sentence and remand the case for re-sentencing. Only where the convicted defendant points out the existence of specific mitigating factors, such as, those enumerated in Part B of the article, and the trial judge has failed to consider or give weight to do so may have resulted in the imposition of an excessive sentence, is it necessary to set aside the sentence and remand the case for resentencing."
Recently, we held that a failure to strictly comply with the sentencing statute does not automatically result in a finding of an excessive sentence. State v. Butler, 450 So.2d 764, 767 (La.App. 5th Cir.1984).
The only mitigating factor defense counsel presented was the fact that Joseph Barnes had not been in trouble for eight years. Although La.C.Cr.P. Art. 894.1 sets guidelines for the sentence, the trial judge has discretion to set the sentence to fit the crime. The Supreme Court in Lanclos, supra at 478 stated "[a]rticle 894.1 is not an exclusive listing of factors to be considered in imposing a sentence. Any and all relevant factors can and should be taken into account by the trial court. The aim of Article 894.1 is to make the punishment fit the criminal as well as the crime." The trial court judge did, however, recite many aggravating circumstances in sentencing Joseph Barnes, i.e., his past criminal record.
In the instant case, Joseph Barnes, was sentenced to the maximum sentence allowed by statute, ten years at hard labor. The Louisiana Supreme Court has held that maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, supra; State v. Santee, 464 So.2d 922 (La.App. 4th Cir.1985). Moreover, ten year sentences for aggravated battery have been upheld in several Louisiana cases. State v. Roberts, 463 So.2d 1007 (La.App. 3rd Cir.1985); State v. Robinson, 431 So.2d 104 (La.App. *53 1st Cir.1983); State v. Williams, 412 So.2d 590 (La.1982). But see State v. Guidry, 472 So.2d 349 (La.App. 3rd Cir.1985), writ denied 476 So.2d 348 (La.1985). In Roberts, supra there was no indication that the sentencing court considered mitigating factors.
It appears that the trial judge did not list any mitigating factors; however, only one was mentioned by defense counsel at trial. The judge did read a very long list of all prior criminal activity of the defendant. Furthermore, although there was some confusion at the sentencing hearing regarding the dismissal of the multiple offender statute, it does not appear to have prejudiced the defendant since the trial judge was already aware of Joseph Barnes's extensive criminal record. Finally, the ten year maximum sentence imposed by law does not appear excessive in this case where the victim was stabbed thirteen times, lost one of his lungs, and was left alone to seek medical aid. Therefore, this assignment lacks merit.
Accordingly, for the reasons stated above, the convictions and the sentences of the defendants are hereby affirmed.
AFFIRMED.
BOWES, J., dissents with written reasons.
BOWES, Judge, dissenting with written reasons
I must respectfully dissent with my learned brothers. I would remand for a new trial based upon assignment of error No. 1 of each defendant: "That the trial judge erred in his instructions to the jury with regard to who bears the burden of proof on the issue of self-defense."
The majority opinion states correctly that in a homicide prosecution, when a defendant alleges that he acted in self-defense, the State has the burden of proving beyond a reasonable doubt that the homicide was not committed in self-defense.
However, I am of the opinion that the majority errs in their conclusion that in non-homicide cases the burden of proving self-defense is on the defendant and that he must prove that burden by a preponderance of the evidence. In reaching the foregoing conclusion, the majority discusses: (1) State v. Landry, 381 So.2d 462 (La. 1980); (2) what it refers to as dicta in two later Supreme Court cases, State v. Freeman, 427 So.2d 1161 (La.1983) and State v. Blanche, 480 So.2d 304 (La.1985); and (3) two concurring opinions in Freeman, supra.
First, I do not agree that the statement made by the court in Freeman, supra is dicta and, further, neither dicta nor a concurring opinion, no matter how brilliant, expound the corpus of the law. Neither becomes the law of the land.
In Freeman, supra, at page 1163, the majority stated:
In the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary.4 State v. Landry, supra; State v. Ford, 368 So.2d 1074 (La.1979); State v. Guinn, supra.

There is apparently no Louisiana jurisprudence distinguishing the burdens of persuasion applicable to self-defense in homicide and non-homicide situations.
The latest expression by the Supreme Court on the question of who carries the burden of persuasion can be found in State v. Garcia, 483 So.2d 953 (La.1986). In Garcia, supra, at page 956, the majority opinion made no distinction between homicidal and non-homicidal self-defense situations when it stated:
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime *54 charged beyond a reasonable doubt. [...]
In addition to these standards, when a defendant claims self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Matthews, 464 So.2d 298 (La.1985); State v. Martin, 458 So.2d 454 (La.1984); State v. Lynch, 436 So.2d 567 (La.1983); State v. Patterson, 295 So.2d 792 (La.1974); State v. Ardoin, 128 La. 14, 54 So. 407 (1911).
Additionally, I see no rational basis for requiring the State to prove beyond a reasonable doubt that a defendant did not act in self-defense where that defendant took a life, but in the case where a defendant has failed to kill to require him to affirmatively prove his failure to take the life was justified. In my opinion, such hair-splitting requirements for burdens of proof are super-technical and irrational and can only tend to encourage the taking of life when such drastic action may not be necessary.
Accordingly, I respectfully dissent from the majority opinion in the respects outlined above, and I would set aside the defendants' convictions and remand the case for a new trial with a requirement that the trial judge instruct the jury that the State has the burden of proving beyond a reasonable doubt in a nonhomicide (as well as in a homicide) situation that the defendant did not act in self-defense.
I concur with my learned and esteemed brothers in the other conclusions reached by them in the majority opinion.