MARION F. EDWARDS, Chief Judge.
12Pefendant/appellant, Jacque Nailor (“Nailor”), has filed this appeal seeking review of his convictions on two counts of criminal acts and the respective sentences. Nailor was charged in Count 1 with aggravated battery in violation of La. R.S. 14:34, and in Count 2 with aggravated assault with a firearm in violation of La. R.S. 14:37.4. Nailor was arraigned, in absentia, and a plea of not guilty was entered on his behalf. In due course, the case was tried before a six-person jury, which unanimously found Nailor guilty of the responsive verdict of simple battery as to Count 1, and guilty as charged with respect to Count 2.
Nailor was sentenced to six months in Parish Prison on Count 1, to run consecutively to his five-year sentence at hard labor for Count 2. Three years of the sentence on Count 2 was suspended, and Nailor was placed on active probation for a period of five years. Nailor was ordered to pay court costs, a fine in the amount of $4,000, and various fees. Special conditions of probation were also imposed.
|3Nailor filed a motion for reconsideration of sentence, which was denied, and a motion for appeal, which was granted.

FACTS

This crime resulted from an altercation between the father (Steven Cain) and the maternal grandfather (Nailor) of a minor child during the return of the child to the mother after a visitation with the father. In the incident, Mr. Cain’s current wife, Renique Smith, was injured.
The testimony at trial shows that Steven Cain is the father of Steven Cain, Jr., and the husband of Renique Smith. Brittany Nailor is his son’s mother, and in 2008, Mr. Cain and Ms. Nailor followed a court-ordered visitation schedule with regard to Steven Cain, Jr. As per the custody ar *819 rangement, Mr. Cain would return his son to the home of Brittany Nailor’s grandmother, Ethel Nailor, on Sundays in the summer between 2:00 and 4:00 p.m. Brittany Nailor would pick the child up from that location.
On June 8, 2008, Nailor, Brittany Nai-lor’s father, was at the home when Mr. Cain brought his son there in accordance with the custody order. This was the first time neither Ethel nor Brittany Nailor were at home to receive the child.
Nailor testified that he lived in Georgia at the time of trial, having moved there to work at the VA Hospital following Hurricane Katrina. He also explained that he is the father of Brittany Nailor and the grandfather of Steven Cain, Jr. He was at his mother’s (Ethel Nailor) home on June 8, 2008 at approximately 2:00 in the afternoon. He was there to pick up his grandson because his daughter could not, and his mother was at work.
It appears from testimony at trial there was tension between Nailor and Steven Cain before this incident.
^According to Mr. Cain’s testimony, when he arrived, Nailor met him in the driveway while armed with a gun in his pocket and appeared very angry. Nailor told the child to go inside the house. Mr. Cain said that he stayed where he was in the driveway. Mr. Cain’s wife, Renique Smith, who also saw the gun, got out of the car and dialed 9-1-1.
After Ms. Smith called 9-1-1, Nailor went inside and put the gun away before coming back outside seconds later with a pit bull. While his wife was still on the phone with the police, Mr. Cain was “easing back” toward his car. He did not exchange words with Nailor at that time. Ms. Smith was standing on the neighbor’s lawn, while Nailor was yelling at her. Nailor subsequently put the dog away, came back outside, and approached Mr. Cain and his wife. Nailor then “put his hands” on Ms. Smith, at which time Mr. Cain told Nailor to stop. Mr. Cain walked over to the driver’s side of the car and popped the trunk of his car from the inside to “create a diversion” so that he and his wife “could get in the car and leave.” When Mr. Cain walked to the driver’s side of the car, Nailor left for a split second before coming back out of the house firing a gun. Mr. Cain ran around the car toward his wife then ran down the street as Nailor fired approximately nine or ten shots at him. Mr. Cain ultimately entered an alleyway approximately two houses away and entered a backyard. When Mr. Cain jumped a gate, two bullets hit the gate behind him. Once the shooting stopped, Mr. Cain exited the backyard where he was and found Ms. Smith lying on the ground in the driveway. She had been shot.
Mr. Cain called 9-1-1 and stayed with his wife until EMS arrived ten minutes later. While she left in the ambulance, Mr. Cain stayed behind to answer questions by police. He signed a consent form giving officers the right to search his car and later was allowed to leave the scene. Mr. Cain testified that he was ^unarmed and never threatened Nailor with a gun, or showed him a weapon. He further identified Nailor in open court.
Nailor testified at trial. He stated that he was concerned for his welfare and that of his grandson at the time of Mr. Cain’s arrival. Nailor explained that he and Mr. Cain had a prior conversation during which Mr. Cain stated “he was going to get me and do something to me.” Consequently, he met Mr. Cain at the door with a gun in his pocket. When Mr. Cain dropped off the child, Nailor told his grandson to go into the house.
*820 Nailor testified that, after he dropped off his son, Mr. Cain was giving Nailor “a real look.” Nailor was concerned that Mr. Cain was armed. Nailor pulled his gun out of his pocket, and asked Mr. Cain if he was armed. Nailor asked Mr. Cain to pull up his shirt and turn around to ensure he did not have a gun as he pointed his own gun at Mr. Cain. Once Nailor felt safe, he put his gun inside on the sofa.
Nailor went outside again and found Mr. Cain still standing quietly in the driveway. Ms. Smith exited the car with a cell phone and told Nailor that she had seen the gun and that she was calling 9-1-1. Nailor told Ms. Smith that the gun was in the house and that she and Mr. Cain had to leave the property. Nailor stated that Ms. Smith pushed him with her finger. Mr. Cain told Nailor not to hit his wife. An argument broke out between Nailor and Ms. Smith during which Nailor told her to get back into her car and not to interfere in the conversation between Nailor and Mr. Cain. Nailor denied that he ever brought a dog outside.
While Nailor was arguing with Ms. Smith, he saw Mr. Cain out of the corner of his eye “dash” to his car. Thinking that he had been tricked, Nailor turned and ran back into the house because he thought Mr. Cain was going to get a gun. By the time Nailor went back outside, Mr. Cain was “digging in the trunk.” Nailor testified that he fired the first shot into the air. Nailor stated that, after he fired the [afirst shot, Mr. Cain bent over into the trunk real fast and it appeared to Nailor that Mr. Cain had something in his hand. At that time, Nailor fired a second shot. Nai-lor moved forward and fired a third shot, at which point Mr. Cain ran. Nailor headed back toward the house and encountered Ms. Smith who told him that he had just shot her. Nailor went into the house, put the gun on the table, and called 9-1-1 to get help for Ms. Smith. Nailor testified that he recalled firing his weapon three or four times. He was fearful that Mr. Cain was going to get a gun from the trunk of his car, based upon Mr. Cain’s previous telephone threat.
On cross-examination, the State reviewed Nailor’s voluntary statement with him for discrepancies. Nailor’s statement did not indicate that Ms. Smith had pushed him. The statement also did not indicate that Mr. Cain dug through the trunk of his car. In the statement, there was no reference to a warning shot. Nailor stated that he fired about nine times, and his intention was to kill Mr. Cain because Nailor believed that Mr. Cain was trying to kill him. Nailor stated that he never intended to shoot Ms. Smith. When he realized Ms. Smith had been shot, Nailor called 9-1-1, but he did not help Ms. Smith in any way. Nailor admitted that he fired the shot that hit Ms. Smith.

LAW AND ANALYSIS

In brief to this Court, Nailor assigns two errors. In his first assignment of error, Nailor contends that the State failed to prove beyond a reasonable doubt that he had not acted in self-defense. The State responds that the evidence at trial demonstrated that Nailor was the aggressor in the incident and was, therefore, not allowed to claim self-defense.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the 17essential elements of the crime beyond a reasonable doubt.[1] Additionally, where circumstantial evidence forms the basis of *821 the conviction, the evidence must exclude every reasonable hypothesis of innocence, “assuming every fact to be proved that the evidence tends to prove.”[2] This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.[3]
Constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt.[4] Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law.[5]
Aggravated assault with a firearm is defined as “an assault committed by the discharge of a firearm.”[6] In this case, Nailor does not argue that the State failed to prove the elements of aggravated battery. Rather, Nailor contends the jury should have found him not guilty because the State failed to carry its burden of proving that he did not act in self-defense.
La. R.S. 14:18, in relevant part, provides:
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
[[Image here]]
|s(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed....
La. R.S. 14:19 further provides:
A. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person’s lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not apply where the force or violence results in a homicide.
La. R.S. 14:21 states: “A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.”
This Court has concluded that a defendant has the burden of proving by a preponderance of the evidence that his actions were in self-defense or in defense of others in a non-homicide case.[7] That holding was reinforced by State v. Steele,[8] *822 wherein this Court stated: “[T]he law in this circuit is that the defendant, in a non-homicide case, has the burden to establish, by a preponderance of the evidence, that he acted in self-defense.”[9]
The defense of self-defense in a non-homicide situation requires a dual inquiry: an objective inquiry into whether the force used was reasonable under the circumstances, and a subjective inquiry into whether the force was apparently necessary.[10]
lain the present case, we find the jury could have found from the evidence that the discharge of the firearm by Nailor was not reasonable under the circumstances or that Nailor could not have subjectively thought the discharging of the firearm was apparently necessary to defend himself.
The record shows that, although Nailor claimed he had received a vague threat on the telephone from Mr. Cain prior to June 8. 2008, Mr. Cain demonstrated to Nailor that he was unarmed as he dropped off his son in the driveway. In contrast, Nailor had armed himself prior to the encounter with Mr. Cain and Ms. Smith. Nailor placed his own gun inside the home but retrieved it again when he saw Mr. Cain near the trunk of his car. Nailor never verified that Mr. Cain had a weapon in his possession, even after firing at him and Ms. Smith repeatedly. Before discharging the firearm for the first time, Nailor could have simply locked himself inside his home and called the police.
To the extent that there was conflicting evidence and testimony at trial about whether Mr. Cain actually reached into his trunk, the resolution depends on the determination of credibility of the witnesses. The credibility of witnesses will not be reweighed on appeal.[11] The jury evidently credited Mr. Cain and Ms. Smith’s version of the events, that Mr. Cain did not reach into the trunk of his car prior to when Nailor opened fire on them.
Furthermore, as noted above, La. R.S. 14:21 states that “a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.” An aggressor would have to retreat before he could use deadly force in [ Tnself-defense, since his initial aggression created the dangerous situation.[12] In this case, Nai-lor’s own statements show that he made no move to retreat from what he considered to be a dangerous conflict. To the contrary, he used deadly force repeatedly on two unarmed individuals. Therefore, as the aggressor, Nailor was precluded from arguing self-defense.
We find no merit in this assignment.
 In the second assignment of error, Nailor asserts the trial court erred in imposing an excessive sentence. Specifically, Nailor contends that his sentence of five years of imprisonment at hard labor with three years suspended is excessive for a first-time offender.
The State responds that Nailor’s claim that the trial court misinterpreted “several key facts” has not been preserved on ap *823 peal because it was not raised in his motion to reconsider sentence. The State further argues that the record reflects that the court considered mitigating factors in imposing Nailor’s sentence. -
In his Motion For Reconsideration of Sentence, Nailor listed nine factors that he believe mitigated against the sentence he received:
(1) Nailor is a former member of the United States Marine Corps;
(2) Nailor has no previous record;
(3) Nailor was not convicted of the more serious charge of aggravated battery;
(4) Nailor is forty-five years old;
(5) Five years is the maximum sentence and is, therefore, excessive;
(6) Nailor is unable to pay any fines and costs because he is incarcerated;
(7) The additional fees, Commissioner Court and I Can, cannot be paid because he is incarcerated and because they exceed the statutory maximum fine. Furthermore Nailor has a disability and will not be employed upon release;
ln(8) The restitution on the simple battery is illegal because he has already received the maximum sentence on that charge; and
(9) Nailor’s disability prevents him from doing manual labor.
As can be seen from the above, the State is correct in its assertion that Nailor did not argue the misinterpretation of facts by the trial judge as a basis for reconsideration of sentence. La.C.Cr.P. art. 881.1(E) provides: “The failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of exeessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.” Therefore, we agree with the State that these specific claims are not properly before this Court on appeal.[13]
However, mitigating factors that Nailor argued in his Motion For Reconsideration and now re-urges on appeal are properly before this Court for review. Specifically, Nailor claims that the district court gave little consideration to the fact that he is in his mid-forties and has no prior criminal record and that he is a veteran.
Contrary to Nailor’s assertion, the record shows that the trial court did, in fact, consider Nailor’s life history when imposing the sentence. The trial court took the sentencing guidelines of La. C.Cr.P. art. 894.1 and noted that Nailor had an “exemplary record” prior to the incident. The court also noted Nailor’s armed forces service and his honorable discharge.
Nailor further urges that the maximum sentence for aggravated assault with a firearm is excessive. Both the United States and the Louisiana Constitutions 1 ^prohibit the imposition of excessive or cruel punishment.[14] A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering.[15] Trial judges are granted great dis *824 cretion in imposing sentences and a sentence will not be set aside as excessive absent clear abuse of that broad discretion.[16]
In reviewing a sentence for exces-siveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence.[17] The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.[18] In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 8) the sentence imposed for similar crimes by the same court and other courts.[19]
In sentencing Nailor, the trial court stated:
I can’t begin to say, sir, how serious your offense was, in the Court’s opinion. The action that you took that day was completely uncalled for. And I hope you realize, as you sit here today, you were literally inches between an aggravated battery, an aggravated assault with a firearm charge and that of possibly first degree murder.
Based on the facts of this case and the sentencing transcript, we do not find the trial court abused its discretion in sentencing Nailor. Accordingly, we find no merit in the excessive arguments.
| ip,For the foregoing reasons, the convictions and sentences from which Nailor appeal are affirmed.

AFFIRMED

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560(1979).

. State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, 592, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).

. State v. Rosiere, 488 So.2d 965, 968 (La.1986).

. State v. Mussall, 523 So.2d 1305, 1309 (La.1988).

. State v. Major, 03-3522 (La.12/1/04), 888 So.2d 798.

. La. R.S. 14:37.4.

. State v. Barnes, 491 So.2d 42, 47 (La.App. 5 Cir. 1986).

. 01-1414 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 547, writ denied, 02-2992 (La.9/19/03), 853 So.2d 632.

. State v. Barnes, 491 So.2d at 44-47 (La.App. 5 Cir.1986) (emphasis as found in the original).

. State v. Freeman, 427 So.2d 1161 (La.1983).

. State v. Lee, 03-901 (La.App. 5 Cir. 12/9/03), 864 So.2d 654, 660.

. State v. Spears, 504 So.2d 974, 977 (La.App. 1 Cir. 1987), writ denied, 507 So.2d 225 (La.1987).

. State v. Schieffler, 02-1047 (La.App. 5 Cir. 2/25/03), 841 So.2d 1000, writ denied, 03-0741 (La.9/19/03), 853 So.2d 636.

. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20.

. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.

. State v. Bacuzzi, 97-573 (La.App. 5 Cir.1/27/98), 708 So.2d 1065, 1068, 1069.

. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340.

. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.

. Id.