476 So.2d 475 (1985)
STATE of Louisiana
v.
Thomas JENKINS.
No. KA 84 1313.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*476 Allen J. Myles, Asst. Dist. Atty., Plaquemine, for State of La.
C. Jerome D'Aquilla, Indigent Defender, New Roads, for defendant.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
The defendant, Thomas Jenkins, was charged in a bill of information with theft of an automobile having a value greater than $500 in violation of La.R.S. 14:67. He pled not guilty and, after a trial by jury, was found guilty as charged. He was sentenced to serve ten years in the custody of the Louisiana Department of Corrections. This appeal followed.

FACTS
On or about May 11, 1983, Elizabeth F. Claverie brought her blue 1979 Chevette to a repair shop at 1506 River Road in the City of Plaquemine, Parish of Iberville, Louisiana. Repair work on the vehicle was to be done by Leonard Little. On May 14, 1983, Little went to the repair shop and found the gate open. He inspected the premises and found the keys to Claverie's car were missing from a nail where they had been placed and Claverie's car was gone. Little reported the incident to the Iberville Parish Sheriff's Office and then advised Claverie what had happened.
On September 23, 1983, Claverie's vehicle was found by Deputy Sheriff Marcus Lorraine on a lot on Besson Lane in the Sunshine community of Iberville Parish. Although the vehicle had been stripped, it was subsequently identified by Claverie.
Marguerite Johnson testified she owned a trailer located on a lot that was "family" property on Besson Lane. She raised Thomas Jenkins from the time he was fourteen months old and considered herself to be his mother. In May of 1983, Jenkins was living with Johnson's sister, Gracie Grayham, on Jake's Lane a short distance away from Johnson's trailer.
Laverne Stewart testified she lived in a trailer on a lot on Besson Lane from 1979 until 1984. In May of 1983, Thomas Jenkins lived in a trailer on a lot next to her. Also in May of 1983, Stewart saw Jenkins driving a blue Chevette. At a later date, Stewart saw Elliott Cushenberry looking under the hood of the Chevette. At that time, there was a thing next to the Chevette that "looked like a swing that you put a chain on to take something out". The Chevette was parked between Stewart's trailer and Jenkins' trailer.
Deputies Hayward Grace and Lorraine both testified the stripped Chevette was recovered at the residence occupied by Thomas Jenkins.
Elliott Cushenberry testified he lived in Sunshine and owned a brown Vega in 1983. In May of 1983, Jenkins and Ronald Wilson came to Cushenberry's house and "they" told Cushenberry that Jenkins took the Chevette. On subsequent cross-examination, Cushenberry would not specify if Jenkins or Wilson made the statement about who took the vehicle. Jenkins told Cushenberry he wanted to get rid of the vehicle because it was hot. Cushenberry understood "hot" to mean stolen. Jenkins asked Cushenberry to drag the car away to Plaquemine Point and burn it. Cushenberry agreed to give Jenkins $200 for the motor in the Chevette. Cushenberry, Jenkins and a third person (who was not identified) *477 removed the motor from the Chevette and put it in Cushenberry's Vega in Jenkins' back yard.
Ronald Wilson testified he did not know anything about the blue 1979 Chevette. He saw a Chevette in June of 1983 on a lot with a bunch of junk cars behind the lot where Johnson's trailer was located. Wilson did not take a motor out of a Chevette and never saw Jenkins drive the Chevette. Jenkins was living with his "Auntee" on Jake's Lane. Wilson did not know if Jenkins had access to Johnson's trailer. Wilson testified Jenkins told him "somebody" dropped the car off at his house. Wilson also testified "another dude" told him Johnson bought the car for Jenkins. (Johnson testified she knew nothing about the car.) Wilson admitted giving a statement to Deputy Lorraine that Johnson bought the car for Jenkins. Wilson said the truth was what he told Deputy Lorraine.

RIGHT OF CONFRONTATION AND CROSS-EXAMINATION

(Assignment of Error No. 3)[1]
Jenkins contends the trial court committed reversible error when it improperly limited his right to cross-examine Cushenberry about criminal charges pending against him. The purpose of this cross-examination was to show bias and interest.
The following occurred during the cross-examination of Cushenberry by Jenkins' counsel:
Q When was the last time you talked to anybody about testifying in this case? Anybody from the District Attorney's Office or the Sheriff's Office talk to you yesterday or today about your testimony?
A About my testimony?
Q Yes.
A Yes.
Q Who talked to you?
A Myles.
Q Mr. Myles, when did he talk to you?
A Yesterday when we had a break. When we had a break yesterday.
Q Any promises been made in return for your testimony?
A No.
Q Don't you have some charges pending against you now?
A Yes.
MR. MYLES: Objection, Your Honor. He can ask him about
MR. D'AQUILA: Well, I think I'm en I'm trying to impeach a witness.
THE COURT: Gentleman, one at a time.
MR. MYLES: I'll repeat my objection. He can ask him if he's been convicted of a crime. He cannot impeach a man by asking if he has charges pending. He might be not guilty. That's not allowed. I think Mr. D'Aquila knows that.
MR. D'AQUILA: I'm not impeaching him now, Your Honor.
MR. MYLES: He's asked the man already if any promises were made. The man answered that question directly no. I don't seeI think the other question is improper.
MR. D'AQUILA: I'm not impeaching him that, Your Honor, I'm trying to bring outI think the jury needs to know that there are some charges pending against this man and it's a possibility that some promises have been made. I'm not trying to impeach him.
MR. MYLES: Well, he asked him that direct question, were promises made, he said no. Now, he's trying to circumvent the law and say the man's got charges pending, we made him some promises. He said no, we did not make him any promises and we did not. Now, he's asking if he's ever been arrested, had charges, that's the same question as whether or not he's ever been arrested, if there's charges pending. He knows he can't do that.

*478 THE COURT: Objection's sustained.
MR. D'AQUILA: I would just like for the record to note an exception to the ruling of the Court.
THE COURT: Okay, the objection's noted.
The main defense herein was that the State failed to prove beyond a reasonable doubt Jenkins took the Chevette. Counsel for Jenkins argued to the jury that at best the State only proved Jenkins possessed the Chevette and Jenkins was charged with theft, not unlawful possession. In this factual posture, Cushenberry was the key witness for the State. Obviously, from the defendant's point of view, it was essential to question Cushenberry's credibility.
It is well settled that the "possibility that the prosecution may have leverage over a witness due to that witness' pending criminal charges is recognized as a valid area of cross-examination." State v. Rankin, 465 So.2d 679, 681 (La.1985). The instant case is factually similar to State v. Brady, 381 So.2d 819, 822 (La.1980), wherein the Court observed as follows:
Defendant's attempted cross-examination about the arrest was not for the purpose of impeaching the witness' general credibilitythe arrest was not presented as proof that the witness is not credible because he has an arrest record. If that had been the case the trial court's ruling would have been correct. Rather, the focus of defendant's questioning was to establish that the district attorney's office had leverage over Mr. Brown as a result of the pending charge (or at least that Mr. Brown might have assumed so), a reason why Mr. Brown's credibility was or might be suspect in this particular case. R.S. 15:492 permits a witness to be questioned as to `any particular fact showing or tending to show' bias or interest in the case on trial and this Court has held on numerous occasions that a witness' hope or knowledge that he will receive leniency from the state is highly relevant to establish bias or interest.
....
The trial court's ruling prevented the defendant from directly challenging the disinterestedness of the prosecution's only witness and prevented the jury from considering relevant information which could have diminished or negated the credibility of the state's only witness. We conclude that the limitation of defendant's cross-examination was prejudicial to the substantial rights of the accused, both his statutory right to impeach a witness' credibility by showing bias or interest and his constitutional right to cross-examine a witness against him. R.S. 15:492, United States Constitution, Amendment VI, Louisiana Constitution, Article I, Section 16. C.Cr.P. art. 921.
[Footnote omitted].
The failure of the trial court to allow cross-examination about pending criminal charges to show bias or interest herein was prejudicial error. Cf. State v. Nash, 475 So.2d 752 (La.1985).
This assignment of error has merit.

DECREE
For the foregoing reasons, the conviction and sentence are reversed. This case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Although Jenkins has asserted eight assignments of error in this appeal, we only need address this one because it is dispositive of the appeal.