498 So.2d 66 (1986)
STATE of Louisiana
v.
Miguel ROSALES.
No. 86-KA-268.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1986.
*67 John H. Craft, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Louise Korns, Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for plaintiff-appellee.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
On August 8, 1985, the defendant was indicted by the grand jury and charged with second degree murder in violation of LSA R.S. 14:30.1. After entering a plea of not guilty, defendant was tried before a twelve-person jury and found guilty as charged by a unanimous vote. Defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, from which he has appealed. We affirm the conviction.
On July 4, 1985, at approximately 1:00 p.m., as the victim was dancing in the middle of the 1100 block of Inca Drive in Harvey, Louisiana, the defendant approached the victim and called his name. The victim did not answer but continued dancing. Defendant walked up to the victim and shot him once in the back of the head. The defendant then walked rapidly away from the scene. Three sisters, who were near the scene of the crime, gave statements to the investigator attesting that they observed the defendant walk up to the victim and shoot him. All three later identified the defendant in a photographic line-up.
Another witness, Jerry Hawkins, testified that, at 1:00 p.m. on July 4, 1985, he was standing by a van approximately fifty feet from the victim, talking to the driver of the van. He saw the defendant walk toward the victim and yell something to him. A couple of minutes later, he heard a shot. He looked up and saw the victim fall. He also saw the defendant put a gun inside his shirt and walk away.
An additional witness, who had known the defendant for several years, stated that, on July 4, 1985, he lived in a home located on the street where the shooting took place. He testified that while looking out of the window, although he did not witness the shooting, he saw the defendant passing on the other side of the street.
The defendant's mother, father and sister testified that the defendant arrived at their house at 2831 Pritchard Road in Marrero, La., at approximately 11:30 a.m. and spent the remainder of the day in their company. They further testified that at 1:00 p.m. the defendant was with them in a car on the Belle Chasse ferry, enroute to the defendant's brother's house in Violet, Louisiana.
The defendant presents three assignments of error:
1. The trial court erred in restricting cross-examination of a critical state witness.
2. The trial court erred in denying defense counsel's motion for a continuance based upon the discovery shortly before trial of the identity of an eyewitness who could not identify appellant as the perpetrator.
3. Also assigned as error are any and all errors patent on the face of the record.

*68 ASSIGNMENT OF ERROR # 1
During the prosecutor's examination of State witness Jerry Hawkins, the witness testified that he had a prior conviction for possession of phencyclidine and that there was currently an open charge against him in Orleans Parish. He stated that he was unaware of any charge pending against him in Jefferson Parish. During cross-examination, however, the State stipulated that there was also an open charge pending against Hawkins in Jefferson Parish. Although Hawkins admitted he had not talked to the police concerning the shooting until he was arrested by Jefferson Parish officials, he also stated the Jefferson Parish District Attorney's office did not promise him anything in return for his testimony. The trial court ruled that the defendant was not allowed to go into the particulars of the charge in Jefferson Parish on the grounds that that line of questioning would violate the witness' Fifth Amendment rights.
Defense counsel argues that the trial court erred in restricting cross-examination of Jerry Hawkins as it is well-settled that the right to cross-examine an adverse witness is an important component of the right to confrontation.
R.S. 15:495[1] allows cross-examination of a witness' prior convictions, but not arrests, to impeach a witness' general credibility. However, R.S. 15:492[2] allows introduction into evidence of "any particular fact showing or tending to show ... bias, interest or corruption" in the matter at trial.
In State v. Brady, 381 So.2d 819 (La. 1980), the court held that cross-examination regarding a witness' pending charges, when used to show that the witness may be testifying in exchange for favorable treatment from the district attorney's office, is permissible:
... the focus of defendant's questioning was to establish that the district attorney's office had leverage over Mr. Brown as a result of the pending charge (or at least that Mr. Brown might have assumed so), a reason why Mr. Brown's credibility was or might be suspect in this particular case. R.S. 15:492 permits a witness to be questioned as to "any particular fact showing or tending to show" bias or interest in the case on trial and this Court has held on numerous occasions that a witness' hope or knowledge that he will receive leniency from the state is highly relevant to establish bias or interest.
Id. at 822
Defense counsel relies on the holding in State v. Nash, 475 So.2d 752 (La.1985) as authority for the contention that this alleged restriction of the defense counsel's cross-examination of Hawkins, in his attempt to show Hawkins' bias, prejudice, and ulterior motives, and thus to lessen Hawkins' credibility in the minds of the jurors, violated defendant's constitutionally-protected right of cross-examination.
In State v. Nash, supra, defense counsel was prohibited from questioning a crucial state witness[3] about the fact that he was on parole from a theft conviction in Oklahoma *69 (although the witness did testify as to the theft conviction) or about the fact that he had not been arrested or prosecuted for the drug activity which preceded the defendant's shooting of the victim. The court found that the trial court's ruling denying the defendant the opportunity to elicit these facts constituted a violation of the defendant's Sixth Amendment right[4] to confront and cross-examine his witness:
Defense counsel should have been allowed to attempt to show and to argue that Winters gave testimony favorable to the state's case in order to avoid imprisonment, either as a result of an Oklahoma parole revocation or a Louisiana prosecution for distribution of marijuana, or both. This possible bias is more compelling impeachment than the prior conviction brought out in the general attack on Winters' credibility. On the facts of this case, to make fully effective use of his right to confront and cross-examine the witness, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Defendant was thus denied the right of effective cross-examination, a constitutional error in the first magnitude which no amount of showing of want of prejudice would cure. [cites omitted]
See also: State v. Ashworth, 469 So.2d 1198 (La.App. 3rd Cir.1985); State v. Harrison, 484 So.2d 882 (La.App. 1st Cir.1986); State v. Jenkins, 476 So.2d 475 (La.App. 1st Cir.1985).
The State, in brief, argues that the trial court's refusal to allow the defendant to cross-examine the witness constitutes harmless error. We agree for the following reasons.
In State v. Rankin, 465 So.2d 679 (La. 1985), the State introduced a witness who testified that the defendant did not kill the victim in self-defense. The defendant was overruled in his attempt to call to the stand the attorney of the witness to determine whether the witness had been promised favorable treatment on a pending but unrelated charge in exchange for his testimony. During cross-examination, the witness admitted that he had a pending charge of being a convicted felon in possession of a firearm; however, he denied that his charge was reduced to a misdemeanor in exchange for his testimony. A footnote in the opinion notes that, according to the defendant's application for writs, the witness' pending charge was disposed of the day after the defendant's trial, the witness receiving a four months sentence after entering a plea of guilty. The Louisiana Supreme Court found that the defendant's own testimony at trial revealed that his justifiable homicide claim was without basis and therefore any error in the trial court's ruling which denied the defendant the opportunity to cross-examine the witness was harmless under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[5]
We find the instant case analogous to Rankin, supra. On direct examination, Hawkins testified that he had an open charge against him in Orleans Parish, but he did not know about any charge in Jefferson Parish. Additionally, the witness stated that the District Attorney's office did not promise him anything for his testimony. During cross-examination of the witness, the State stipulated that there was an open charge in Jefferson Parish against the witness, thus damaging his credibility. When asked by defense counsel if he offered the information in hopes of working out a deal for himself, the witness responded. *70 he did not need a deal in his case. Nevertheless, defense counsel was allowed to bring out on cross-examination testimony from the witness admitting that he did not relate the information concerning the shooting until after he had been arrested in Jefferson Parish.
Throughout the record, the State conceded defense counsel's right to question the witness regarding any bias or prejudice stemming from the open charge against him. The State only objected to defense counsel delving into the content of the charge so as to cause undue prejudice on the part of the jury. We agree with the State that the type of charge is not important under the facts of this case (although it is conceivable it could be in a trial on a different type of charge). Also, we note again, questioning of the witness was permitted by both the State and defense counsel regarding whether or not he was influenced to provide his testimony in this matter. In both instances, he replied negatively. Additionally, in closing arguments before the jury, defense counsel stated:
But he, upon being arrested, upon being at Jefferson Parish Correctional Center, then gets word to the police that arrested him that he's got some information. Now, let's talk furthermore about his open charges. I asked him whether or not he's got any open charges? `Well, I think I've got one in Orleans Parish.' `Have you got one anywhere else?' `Oh no, I don't know about that. I don't know about that.' Well, the State attempts to whatever at that point, the State jumps up and says `We'll stipulate that he has an open charge in Jefferson Parish.' Before I could even cross-examine him about that, the State fills it in, `Oh, you do have an open charge. You do have an open charge. Don't forget about that one. You've got another open charge,' in the same Parish where he is going to give this information. And all I'm asking you to do, ladies and gentlemen, is to consider this fact when you go back and you evaluate and you weigh whether or not this person had any possible motive in testifying falsely or stretching the truth or being sure of his identification, to consider the fact that isn't it reasonable for any person who has an open charge to feel that he might get some leniency for himself if he delivers something that will make the State happy?
From the above, we conclude that defense counsel was given ample opportunity to confront this state witness and to attempt to damage his credibility.
Additionally, in this case, three eye witnesses to the shooting, apart from Hawkins, testified that they saw the defendant walk up to the victim and shoot him in the back of the head. Given the testimony of the other witnesses, the fact that Hawkins stated he did not testify in exchange for leniency, and the fact that the jury was aware that Hawkins did not go to the police with this evidence until he was under arrest for the pending charge, we conclude that, even if there is any error in the trial court's ruling, it is harmless "beyond a reasonable doubt." Accordingly, we find this assignment lacks merit.

ASSIGNMENT OF ERROR # 2
Defense counsel bases his second assignment of error on the following events.
On the Monday that trial was scheduled to begin, the defense counsel moved for a continuance on the grounds that he had recently discovered a witness to the homicide, Carl Higgins, who was incarcerated with the defendant, and whose testimony would be exculpatory to the defendant. This motion was presented after a hearing during which Mr. Higgins testified he had witnessed the shooting and that, although he had identified the defendant's photograph as the perpetrator, he could not identify the defendant as he appeared in court. Higgins also testified that he knew the Williams sisters and that it would have been impossible for them to have seen who shot the victim from where they were standing at the time the shooting occurred. The defense counsel requested a continuance to discover if there were witnesses to corroborate Higgins' story. The trial court denied the defendant's motion.
Under La.C.Cr.P. art. 712, much discretion is vested in the trial court's power *71 to grant a continuance. A court of appeal will not disturb a trial court's refusal to grant such a motion absent a clear abuse of discretion and a showing of specific prejudice. State v. Benoit, 440 So.2d 129 (La.1983); State v. Barrios, 425 So.2d 980 (La.App. 5 Cir.1983).
In this case, the defendant argues that he was prejudiced because he had insufficient time to investigate Higgins' testimony. However, the testimony did not indicate that there would be more witnesses to testify to the location of the Williams sisters at the time of the shooting or to indicate that someone other than the defendant shot the victim. Furthermore, we note that defense counsel did not call Higgins to the witness stand even though he emphatically stated on more than one occasion that he did intend to call him. Under these circumstances, we are of the opinion that the trial court did not abuse its discretion in denying the defendant's motion for a continuance.
Defendant requests that we review the record for any errors patent. We have done so in accordance with well established law and procedure and find that the record in this case reveals no errors patent.
Accordingly, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] R.S. 15:495 provides:

Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
[2] R.S. 15:492 provides:

When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
[3] It was principally by this witness' testimony that the State attempted to prove beyond a reasonable doubt that the defendant did not act in self-defense.
[4] See also Louisiana Constitution of 1974, Art. 1, § 16; Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
[5] In Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the harmless error rule was stated: "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." The Louisiana Supreme Court adopted this standard in State v. Gibson, 391 So.2d 421 (La.1980). Also, C.Cr.P. art. 921 provides that a judgment or ruling "shall not be reversed ... because of any error ... which does not affect the substantial rights of the accused."