570 So.2d 519 (1990)
STATE of Louisiana
v.
Katherine CLAYTON.
No. 90-KA-340.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
*522 Alvin Turner, Jr., Asst. Dist. Atty., Convent, for plaintiff/appellee.
Charles R. Jones, Jones & Murray, New Orleans, for defendant/appellant.
Before CHEHARDY, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
On May 31, 1989 the St. James Parish grand jury returned an indictment charging the defendant, Katherine Clayton, with second degree murder in violation of LSA-R.S. 14:30.1. At arraignment the defendant entered pleas of not guilty and not guilty by reason of insanity. A sanity commission was convened and defendant was found legally competent to proceed. The defendant withdrew her insanity plea and was tried by a jury on November 15 and 16, 1989. She was found guilty of manslaughter and was subsequently sentenced to imprisonment at hard labor for eighteen years. A timely filed motion for appeal of the conviction and sentence was granted. We affirm.

FACTS
On the morning of May 8, 1989, deputies from the St. James Parish Sheriff's Department were summoned to investigate a shooting incident at the trailer residence of Tracy and Katherine Clayton. Upon arriving, the officers found the nude body of Tracy Clayton on the bed in the couple's bedroom. Mr. Clayton had been killed by a single gunshot wound to the head. The officers then learned that Katherine Clayton, the decedent's wife, had begun acting hysterically and therefore had been taken by family members to the emergency room of a local hospital. While some of the police officers proceeded to the hospital to question Ms. Clayton, other officers searched the trailer residence for evidence relating to the homicide. The defendant confirmed to investigating officers and to members of her family that she had been involved in her husband's shooting.
Although defendant's version of the incident varied, essentially she claimed that her husband came home, threatened and abused her and her children with his gun and subsequently raped her. An ensuing struggle over the gun resulted in the victim's death.
On two occasions while being seen at the hospital emergency room, the defendant told investigating officers that she dropped the gun by the side of her bed after the shooting. When officers at the trailer did not find the weapon near the bed, they expanded their search. The officers found the weapon in the living room of the trailer. The gun had been concealed inside a decorative pillow which had been cut open to accommodate placement of the pistol inside the pillow. The pillow had then been placed, with certain other bloody items, inside a paper bag. The paper bag, in turn, had been put into a larger plastic trash bag which was knotted to prevent easy access to the bag. Upon being released from the hospital emergency room, the defendant was taken into police custody and booked for the homicide of Tracy Clayton.

Assignment number one.
The defendant asserts that the trial court erred in denying her motion for continuance.
The defendant moved to continue the trial, arguing that a material defense witness was not available to testify and that the state produced the results of laboratory tests performed on certain physical evidence in the case too late for the defense to properly analyze those results or to conduct its own testing of the evidence. Counsel for the defendant filed a written motion for a continuance, which the district court heard on November 14, 1989 immediately prior to the commencement of trial.[1] The *523 trial court denied the continuance after noting that, even pretermitting the procedural irregularities of the motion, the defense had not subpoenaed the alleged material witness to testify at trial, nor had the defense attempted to obtain authority for laboratory testing of any evidence during the entire pre-trial phase.
On appeal, the defendant claims that the denial of the continuance severely prejudiced her ability to present a defense at trial. Essentially, the defendant contended that her husband physically abused and raped her and then was killed when a pistol over which the couple was struggling accidentally discharged. The material witness alleged to have been unavailable for trial was Ms. Barbara Davison, a representative of the Battered Women's Program in Baton Rouge. According to the defendant, Ms. Davison's testimony was vital in establishing that the defendant's conduct conformed to that of an abused spouse or other victim of family violence. The defendant further argues on appeal that the state provided her with its laboratory testing results only nine days before trial, thereby making it impossible for the defendant to properly evaluate those results or to procure her own testing of the evidence.
LSA-C.Cr.P. art. 707 provides that a motion for a continuance must be filed, in writing, at least seven days prior to the commencement of trial. Under that article, the movant must also state the specific grounds forming the basis of the continuance request. If the motion is based on the absence of a witness, LSA-C.Cr.P. art. 709 obligates the movant to set out the factual substance and materiality of the absent witness's anticipated testimony, the likelihood of the witness's availability to attend the rescheduled trial, and those facts demonstrating a diligent effort by the movant to secure the witness's attendance at the trial. The decision to grant or deny a timely filed motion for continuance rests with the discretion of the trial court. LSA-C.Cr.P. art. 712.
While pointing out that the defendant's motion for continuance was not filed at least seven days prior to trial, the trial judge chose to address the motion as if timely filed under LSA-C.Cr.P. art. 707. He denied the motion based on its merits. A trial court's denial of a motion for a continuance does not amount to reversible error absent an abuse of discretion and a showing of specific prejudice. State v. Benoit, 440 So.2d 129 (La.1983); State v. Rosales, 498 So.2d 66 (La.App. 5th Cir.1986).
The defendant did not sufficiently meet the requirements of arts. 707 and 709. The motion was not filed timely even if the earlier of the two dates shown on the motion is considered. While the motion alleges the nonavailability of a material witness to testify at trial, it neither identifies the witness nor alleges the substance and materiality of that witness's testimony. Moreover, the motion is silent as to any efforts to obtain the witness's presence at trial. Counsel for defendant admitted to the court that no subpoena had been issued to the witness.
With regard to the defendant's complaint about laboratory testing results, the defendant's motion merely recites that the defendant had been unable to obtain a hearing on discovery motions necessitated by the production of discovery information since the trial court's previous hearing in the matter.[2] This vague and general assertion hardly complies with the specificity requirement imposed by LSA-C.Cr.P. art. 707.
The defendant's claim of inadequate time to prepare for trial is likewise without merit. Although the defendant asserts that discovery was held in abeyance until the sanity hearing on October 10, 1989, the *524 record belies that assertion but indicates instead that the state afforded the defendant open file discovery. Thus, we must assume that the defendant was fully aware of evidence seized and failed to conduct her own testing pursuant to LSA-C.Cr.P. art. 719. Further, the defendant acknowledged that the state provided the defense with a copy of the laboratory report as soon as it was available. Neither on her motion to continue nor in argument to the court did defendant allege any basis upon which to challenge or disagree with the test results.
Consequently, we find no error in the trial court's denial of defendant's motion for continuance. This assignment is without merit.

Assignments numbers two and three.
By these two assignments of error the defendant asserts that the jury was tainted and, thus, unable to impartially judge the defendant. In assignment number two the defendant cites error in the trial court's refusal to question the previously sworn jury as to whether they viewed a certain television program. The program, which aired the evening after the jury had been impaneled and the court had recessed for the day, portrayed the dramatic account of a mother charged with murdering her child and blaming the child's death on animals.
The defendant did not request sequestration of the jury and admits on appeal that sequestration is discretionary with the trial court in this non-capital case. LSA-C.Cr.P. art. 791.
The defendant gave no indication at trial how the viewing of a factually dissimilar television program would prejudice the jury against the defendant. Nor does defendant make the allegation on appeal that any prejudice actually occurred. Consequently, we find no error in the trial court's decision to proceed with the trial without mention of the program.
In the third assignment the defendant asserts her motion for mistrial should have been granted on the ground that one of the jurors failed to inform the court in voir dire that she was acquainted with the victim's family.
On the second morning of trial defense counsel moved for a mistrial stating that one of the jurors had been seen in conversation with the victim's mother during the selection of the jury. During an in-camera interrogation, the juror assured the court that she did not know any of either the victim's or the defendant's family. She further stated that she was not familiar with the facts of the case and assured the court she would be fair and impartial.
At trial the defendant based his motion on LSA-C.Cr.P. art. 775(6) which permits a mistrial when false statements made by a juror on voir dire prevent a fair trial. Since the juror in question here made no false statements, the motion for mistrial was properly denied. These assignments are without merit.

Assignment number four.
By this assignment of error the defendant asserts that the state gave a "summation of information," not an opening statement which explained the nature of the evidence against the defendant as required by LSA-C.Cr.P. art. 766. Defendant's complaint is that the statement was too general to properly describe the evidence with which the defendant would be confronted at trial.
LSA-C.Cr.P. art. 766 requires the state, in its opening statement, to explain the nature of the charge against the defendant and to set forth generally the nature of the evidence the state intends to introduce to prove that charge. The underlying purposes of article 766 are to prevent surprise and to permit preparation of defense trial strategy. State v. Parker, 436 So.2d 495 (La.1983). Under article 766, the state's opening statement is required to set forth, only in general terms, the prosecution's theory of the case. "It is not necessary that the state detail every shred of evidence in an opening statement. It is sufficient for the state to give a general description of the evidence it plans to introduce. (citation omitted). The state need not name all of its witnesses in the opening statement.... (citation omitted)" State v. *525 Edwards, 406 So.2d 1331, 1350 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). Rulings on the proper scope of an opening statement are within the sound discretion of the trial judge and should not be disturbed absent a clear abuse of that discretion. State v. Brown, 428 So.2d 438 (La.1983).
A review of the state's opening statement in this case reflects that it complied with LSA-C.Cr.P. art. 766. The prosecutor explained the nature of the second degree murder charge against the defendant and provided an adequate description of the evidence he intended to use to prove that charge. Although the defense claims that the state's opening statement was insufficient, the defendant did not interpose any objection at trial to evidence being beyond the scope of the opening statement. There is no indication in the record that the defendant was surprised by any evidence presented at trial or that she was prejudiced in the preparation of her defense. The trial judge therefore properly ruled on the defense objection to the state's opening statement in this case.
This assignment of error lacks merit.

Assignments numbers five, seven, and eight.
The defendant asserts that the trial court committed reversible error by allowing three witnesses to give opinion testimony beyond their expertise.
The defendant first challenges the trial court's ruling on an objection to opinion testimony raised during the state's examination of Ms. Ernestine Williams, the defendant's mother. Ms. Williams testified that each morning she drove to the defendant's trailer and picked up her granddaughter before school. The prosecutor asked Ms. Williams if the child appeared to be upset on the morning of the incident, and counsel for the defendant objected. The trial judge overruled the objection and allowed Ms. Williams to respond.
The Louisiana Code of Evidence makes it clear that opinion testimony by lay witnesses, while only authorized in limited situations, is not absolutely prohibited. A lay witness may express those opinions or inferences which are rationally based on the first-hand perceptions of the witness and are helpful in understanding the witness's testimony or in resolving a factual matter at issue. LSA-C.E. art. 701.
Ms. Williams' testimony concerning her granddaughter's emotional composure on the day of the incident was admissible. In her previous testimony, Ms. Williams established that she picked up her granddaughter each morning before school. Because she observed her granddaughter on a daily basis, Ms. Williams could rationally form an opinion concerning the child's emotional state on the morning of the murder. Moreover, this testimony was helpful in determining the validity of the defendant's contention that she and the victim engaged in a violent physical struggle while her young children were also present in the trailer residence. The trial judge's ruling on the objection to Ms. Williams' opinion testimony was therefore correct. LSA-C.E. art. 701.
The defendant next challenges the admission of Detective Willie Taylor's testimony concerning an allegedly misfired 25 caliber cartridge found in the defendant's residence. Detective Taylor conducted a search of the defendant's trailer on the morning of the incident. At the trial, he testified that during the search he found a garbage bag which had been knotted closed. Inside the garbage bag Detective Taylor found a paper bag which contained a decorator pillow and a 25 caliber cartridge. A 25 caliber pistol had been stuffed inside the pillow through a cut in the material. With regard to the cartridge, Detective Taylor testified that the round appeared to be live because the slug and casing were still intact. However, upon further examination, Detective Taylor noticed that the cartridge's primer was indented. Over a defense objection, the trial judge allowed Detective Taylor to testify that the indented primer indicated that the cartridge had misfired. Prior to ruling on the objection, the trial judge afforded the state the opportunity to lay a foundation for the witness's testimony on this subject; *526 however, Detective Taylor admitted that he possessed no qualifications as a firearms/ballistics expert except his experience as a police officer. The determination of whether the cartridge found by Detective Taylor had misfired required scientific, technical or other specialized knowledge beyond the witness's experience. Since Detective Taylor was not qualified as an expert witness, his opinion testimony regarding the alleged misfired cartridge was inadmissible. LSA-C.E. art. 702. Nevertheless, the review standard for the erroneous admission of evidence is whether there is a reasonable possibility that the constitutional error complained of might have contributed to the defendant's conviction. State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir. 1988), writ denied, 538 So.2d 1010 (La. 1989). The reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Id.
A thorough review of the record in this case convincingly demonstrates that the erroneous admission of Detective Taylor's testimony was harmless. The challenged testimony was contradicted by state witness Patrick Lane, a forensic scientist with the Louisiana State Police crime laboratory. On the basis of his education and background, Mr. Lane was accepted at trial as an expert in firearms identification and analysis and as an expert in fingerprint analysis. Mr. Lane testified that as a forensic scientist he had experience in examining cartridge casings to determine if a misfire occurred. He further testified that he did not examine any cartridge casings in this case. However, the determination of whether a cartridge misfired would require a laboratory examination of the round, not mere visual inspection. This expert testimony by Mr. Lane effectively refuted the lay opinion expressed by Detective Taylor regarding the possibility of a misfire. Moreover, while the state attempted to offer the misfire evidence as proof of the specific intent element of the second degree murder charge against the defendant, the jury apparently rejected that evidence and convicted the defendant of manslaughter. Considering these facts, the admission of Detective Taylor's testimony concerning the allegedly misfired cartridge constitutes harmless error. State v. DiLosa, supra.
Finally, the defendant argues that the trial court improperly permitted Patrick Lane to express his opinion regarding why there were no fingerprints on the 25 caliber pistol found at the crime scene. Such opinion testimony, according to the defendant, extends beyond the scope of Mr. Lane's expertise. LSA-C.E. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
As previously stated, Mr. Lane was accepted at trial as an expert in firearms identification and analysis and as an expert in fingerprint analysis. The disputed inquiry concerning the absence of fingerprints on the 25 caliber pistol clearly falls within the scope of Mr. Lane's firearms and fingerprint expertise, and his opinion testimony in this area was properly admitted by the trial court. LSA-C.E. 702.
These assignments or error lack merit.

Assignment number six.
By this assignment the defendant asserts the trial court erred by allowing the state to lead a witness in direct testimony.
At trial, the following exchange took place during the state's direct examination of Mr. Albert Williams, Jr., the defendant's brother:
Q (state) Did you notice anything unusual about her (the defendant's) physical appearance?
A (Mr. Williams) I didn't pay no attention.
Q (state) Do you understand my question as to the physical appearance? Did you see any bruises?
The defendant objected that the state was improperly asking the witness leading questions, and the trial court overruled that objection. On appeal, the defendant *527 contends that the trial court's ruling on the objection constituted error.
Generally, the use of leading questions during the direct examination of a witness is improper unless authorized under the circumstances described in LSA-C.E. art. 611 C. A leading question is one suggesting the answer that the witness is expected to give. However, a question calling for a "yes" or "no" response is not leading unless that question also suggests to the witness which of those responses to give. State v. Anderson, 526 So.2d 499, 503 (La.App. 1st Cir.1988) writ den. 537 So.2d 1160 (La.1989). The question posed to Mr. Williams was susceptible to an affirmative or negative response; but the question did not suggest to Mr. Williams which of those two answers were expected. Accordingly, the question was not leading, and the trial judge properly overruled the defendant's objection. This assignment of error lacks merit.

Assignments numbers nine and ten.
These assignments allege the trial court erred in denying defendant's motion for new trial.
After her conviction, the defendant filed a motion for a new trial taking issue with the trial testimony of Detective Willie Taylor and that of Dr. Paul McGarry, the forensic pathologist who autopsied the victim. The motion alleges that the testimony of these two witnesses was inaccurate and exaggerated the facts of the case beyond credibility. The trial judge denied the motion. Citing LSA-C.Cr.P. art. 851(1), the defendant argues on appeal that the lower court's denial of the motion was incorrect because the verdict returned by the jury against the defendant was contrary to the law and the evidence in the case.
Throughout the trial, the defendant contended that the victim was killed while the two struggled over a weapon. She also asserted she dropped the weapon by the bed. On appeal she argues that Detective Taylor's testimony that the gun was found carefully concealed inside a pillow placed in bags is untrue. She further argues that Dr. McGarry's testimony that there was no sign of a recent struggle on the victim's body is incredulous.
Appellate review of a trial court's denial of a new trial motion which alleges that the verdict is contrary to the law and the evidence under LSA-C.Cr.P. art. 851(1) is limited to the question of whether the trial court judge properly exercised his wide discretion. State v. Humphrey, 445 So.2d 1155 (La.1984); State v. Green, 469 So.2d 1161 (La.App. 5th Cir.1985). It is not the appellate court's function to reevaluate a jury's credibility choices and factual findings. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Butler, 450 So.2d 764 (La.App. 5th Cir.1984).
A physician who examined the defendant on the day of the incident at 10:30 a.m. found no injuries to suggest that the defendant had been engaged in a physical struggle with another. The doctor found nothing more than a small, slightly swollen area above the defendant's left kneecap. Moreover, further examination of the defendant failed to reveal any indication of recent sexual activity on her part. Given that testimony and the opinion of Dr. McGarry that the victim was unaware that he was about to be shot, we find no abuse of discretion in the trial court's finding that the testimony of the two witnesses was credible.

Assignment number eleven.
By this assignment the defendant challenges as excessive her sentence of eighteen years imprisonment at hard labor with credit for time served. In sentencing the defendant the trial court considered the entire Pre-Sentence Investigation Report including letters of reference submitted in support of the defendant. Sentencing was accompanied by articulate written reasons for imposition.
The Louisiana Constitution, in Article 1, Section 20, prohibits the imposition of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant's constitutional right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983); State v. *528 Sepulvado, 359 So.2d 137 (La.1978), appeal after remand 367 So.2d 762 (La.1979); State v. Smith, 520 So.2d 1252 (La.App. 5th Cir.1988), writ denied 523 So.2d 1320 (La.1988). A sentence is considered unconstitutionally excessive if it is grossly out of proportion to the severity of the offense or is nothing more than a needless and purposeless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Rochefort, 504 So.2d 1116 (La.App. 5th Cir.1987). However, given compliance with LSA-C.Cr.P. art. 894.1 and absent a sentence that shocks the reviewing court's sense of justice, a sentence will not be set aside as unconstitutionally excessive unless there is manifest abuse of the trial judge's discretion. State v. Sweeney, supra; State v. Calamia, 490 So.2d 428 (La.App. 5th Cir.1986).
LSA-C.Cr.P. art. 894.1 provides a framework for evaluating whether a sentence is excessive, though within the statutory limits. State v. Sepulvado, supra. Under that article, a trial court sentencing an offender should consider the seriousness of the crime, the facts surrounding the offense, the offender's personal background and prior criminal record, the likelihood that the offender will commit another crime, and the offender's rehabilitation potential. To insure that the sentence imposed on an offender is tailored to the particular offense, the trial court is required to specify the aggravating and mitigating circumstances considered in imposing sentence. However, the judge need not articulate every factor he considered as long as the record reflects that he considered sufficiently the guidelines of article 894.1 in imposing the particular sentence. State v. Accardo, 466 So.2d 549 (La.App. 5th Cir.), writ denied, 468 So.2d 1204 (La. 1985).
The trial judge imposed a sentence in the higher range of available sentences, although not the maximum of 21 years. However, the trial judge articulated his reasons for that sentence using the appropriate LSA-C.Cr.P. art. 894.1 guidelines. Despite her previous misdemeanor convictions, the defendant is classified as a first-time felony offender for parole purposes. As such, she is eligible for parole consideration after serving one-third of the sentence imposed. LSA-R.S. 15:574.4 A(1). In formulating a particular sentence, the trial judge may take parole eligibility into account. State v. Green, 418 So.2d 609 (La.1982); State v. Richardson, 550 So.2d 961 (La.App. 5th Cir.1989).
In light of the foregoing considerations, the defendant's sentence does not appear to be excessive. This assignment of error lacks merit.

Assignment number twelve.
The defendant requests a review of the record for errors patent. We have made such a review and have found none. This assignment is meritless.
Consequently, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant's written motion bears two different filing date annotations. A time-clock stamp from the St. James Parish clerk of court's office reflects the filing date as November 8, 1989, while the caption of the motion contains a handwritten entry showing November 14, 1989 as the filing date.
[2] The accuracy of this assertion is subject to question because the record reflects that at the previous hearing in the case on October 10, 1989, the state had already agreed to allow the defense open file discovery, and counsel for the defendant advised the trial court that discovery had been satisfied.