575 So.2d 848 (1991)
STATE of Louisiana
v.
Edward MUNOZ.
No. 90-KA-665.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 1991.
*849 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Martin E. Regan, Jr., New Orleans, for defendant-appellant.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Edward Munoz was charged by Bill of Information with attempted second degree murder in violation of LSA-R.S. 14:27, 14:30.1. He pled not guilty and was tried by a jury and was found guilty of aggravated battery. The district judge sentenced the defendant to imprisonment at hard labor for ten years with credit for time served. This appeal followed and the defendant alleges two assignments of error:
1. When does a relatively harmless instrument become a dangerous weapon for purposes of committing an aggravated battery?
2. Whether the imposition of the maximum sentence of ten (10) years at hard labor for a seventeen year old first offender for aggravated battery is excessive.

FACTS
On the evening of October 14, 1989, 14 year old Jeffrey Moody and one of his friends were talking with two girls in the parking lot of a Kenner Theater. Jeffrey and one of the girls were seated on the ground, and the other two youths were standing next to them. From the rear of the theater building, an automobile approached the four youths and stopped. The defendant and another male got out of the automobile and walked toward Moody and his three companions. Moody and his three companions had never met or seen *850 Munoz prior to this occasion. The defendant went straight over to Moody, who was still sitting on the ground, and stood over him. Munoz asked Moody where he "hung out", and Moody responded with the name of his high school. Without provocation, the defendant then punched Moody in the head, knocking him over to the ground. Munoz began kicking Moody in the stomach, chest and head. In an effort to ward off the kicks, Moody curled himself into a fetal position with his hands over his head. One of the girls who witnessed the attack testified at trial that the defendant kicked Moody so forcefully that Moody's body was lifted off the ground. That same girl further testified that, when she said something to the attackers, the defendant's accomplice punched her in the face. Sensing the grave danger of this situation, Moody's friend ran into the theater to summon assistance. The theater manager and a doorman immediately went out to investigate the matter. They found Moody on the ground and his assailant gone. The manager helped Moody into the theater office and then called the police and the victim's mother. Because of the victim's lethargic behavior, Mrs. Moody took her son directly to the hospital from the theater. Moody's condition quickly deteriorated. Within a few hours of reaching the hospital, Moody slipped into a coma from which he has not revived. The neurosurgeon who operated on the victim testified at trial that a blood vessel near the victim's brain had been severely damaged during the assault on Moody. Intracranial bleeding resulted in Moody slipping into a coma. This neurosurgeon characterized the attack on Moody as brutal. Munoz testified at trial that he mistakenly identified Jeffrey Moody as the individual who had been "messing around" with the defendant's girl friend. Munoz admitted that he punched and kicked the victim, but he also testified that he did not intend to injure Moody as seriously as the injuries actually sustained by the victim.

ASSIGNMENT OF ERROR NUMBER ONE
When does a relatively harmless instrument become a dangerous weapon for purposes of committing an aggravated battery?
At the time of this incident, the defendant was wearing rubber-soled tennis shoes. The defendant contends that these tennis shoes do not constitute a "dangerous weapon" as required for the commission of an aggravated battery. He therefore challenges his conviction on appeal.
To support the jury's conviction of the defendant for aggravated battery, the state had the burden of proving three elements: (1) that the defendant intentionally used force or violence on Jeffrey Moody; (2) that the force or violence was inflicted with a dangerous weapon, and; (3) that the dangerous weapon was used in a manner likely or calculated to cause death or great bodily harm. LSA-R.S. 14:34; State v. Barnes, 491 So.2d 42 (La.App. 5th Cir.1986). LSA-R.S. 14:2 defines a dangerous weapon as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." Thus, an instrumentality may be a "dangerous weapon" not solely because of the inherent danger it poses, but also because the instrumentality is used in a manner likely to result in death or grave bodily harm. State v. Bonier, 367 So.2d 824 (La. 1979). See also State in the Interest of Ruschel, 411 So.2d 1216 (La.App. 4th Cir.1982). Moreover, the dangerousness of the instrumentality because of its use is a factual question for the jury to decide. State v. Murff, 215 La. 40, 39 So.2d 817 (1949).
The dangerous weapon alleged by the state in this case was a tennis shoe. Although the defendant argues that the tennis shoe is not a dangerous weapon, the evidence presented by the state at trial supports the opposite conclusion beyond any doubt. An eyewitness testified that the defendant kicked the victim in the head so forcefully that the impact lifted the victim's body off the ground. The physician who operated on Jeffrey Moody characterized the defendant's attack on Moody as brutal. In the face of such convincing evidence, the jury's factual determination that the defendant used his tennis shoe as a *851 dangerous instrument, appears unassailable. See State v. Taylor, 485 So.2d 117 (La.App. 2nd Cir.1986).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Whether the imposition of the maximum sentence of ten (10) years at hard labor for a seventeen year old first offender for aggravated battery is excessive.
A sentence is unconstitutionally excessive if it is grossly out of proportion to the severity of the offense or is nothing more than a needless and purposeless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Clayton, 570 So.2d 519 (La.App. 5th Cir. 1990). Even a sentence within the statutory parameters may violate the constitutional prohibition against excessive punishment if not justified by the circumstances surrounding the offense and/or the character and propensities of the offender.
LSA-C.Cr.P. article 894.1 provides a framework for evaluating whether a sentence is excessive, even though within statutory limits. State v. Sepulvado, 359 So.2d 137 (La.1978), appeal after remand, 367 So.2d 762 (La.1979). Under that article, a trial court sentencing an offender should consider the seriousness of the crime, the facts surrounding the offense, the offender's personal background and prior criminal record, the likelihood that the offender will commit another crime, and the offender's rehabilitation potential. To insure that the sentence imposed is tailored to the particular offense, the trial court is required to specify the aggravating and mitigating circumstances considered in imposing sentence. While he need not articulate every factor he considered, the record must reflect that he considered the guidelines of article 894.1 in imposing the particular sentence. See State v. Clayton, supra, State v. Accardo, 466 So.2d 549 (La. App. 5th Cir.1985), writ denied, 468 So.2d 1204 (La.1985). Given compliance with LSA-C.Cr.P. article 894.1, a sentence will not be set aside as unconstitutionally excessive unless there is a manifest abuse of the trial judge's discretion. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Calamia, 490 So.2d 428 (La.App. 5th Cir.1986); State v. Clayton, supra.
The trial judge imposed the maximum available sentence despite the fact that this defendant was barely seventeen and had no history of prior criminal activity.
Maximum sentences are generally reserved for the most serious offenders. See State v. Tzuanos, 491 So.2d 826 (La. App. 3rd Cir.1986) and cases cited therein, State v. Stucke, 419 So.2d 939 (La.1982), State v. Jones, 398 So.2d 1049 (La.1981). However maximum sentences are also appropriate in cases involving the most serious violations of the described offense. State v. Tzuanos, supra.
This case falls into the latter category. The defendant's unprovoked attack on the fourteen year old victim nearly resulted in his death and has left him in a coma. The trial judge described the attack as "brutal" and "vicious" and remarked that although he respected the jury's verdict, he was of the opinion that the defendant possessed the intent to kill at the time of the attack. The trial judge also noted, in response to counsel's argument that were the defendant to be placed on probation restitution payments could be made, that nothing could compensate the victim or his family for what had occurred.
The trial judge's extensive comments indicate that he carefully considered the guidelines of C.Cr.P. article 894.1 in determining the appropriate sentence. Nothing in the record suggests that it was either arbitrarily or hastily imposed. Moreover, the trial transcript "clearly illumines the sentencing choice."
The standard for determining whether a trial judge has abused his discretion is whether the sentence imposed is grossly disproportionate to the severity of the crime. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980); State v. Tzuanos, supra at 828.
*852 To be deemed excessive, a penalty must be so disproportionate to the crime committed "as to shock our [the court's] sense of justice". State v. Bonanno, supra.
Considering that the defendant will be eligible for parole after serving one third of the sentence actually imposed, the sentence is not excessive under the circumstances of this case.
This assignment of error is without merit.
We have examined the record for patent errors and none were found.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.